Zack L. Winzeler, USB #12280
Brian M. Rothschild, USB #15316
Whitney E. McKiddy, USB #17585
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, UT 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
ZWinzeler@parsonsbehle.com
BRothschild@parsonsbehle.com
WMcKiddy@parsonsbehle.com
ecf@parsonsbehle.com

*Attorneys for Defendants, Counterclaim Plaintiff,
and Third-Party Plaintiff*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br>PLAZA 106 LLC,<br><br>      Debtor. | |
| PLAZA 106 LLC,<br><br>      Plaintiff and Counterclaim Defendant,<br><br>v.<br><br>FIRST UTAH BANK, a Utah State Chartered Bank; and MICHAEL R. BROWN, in his capacity as Successor Foreclosure Trustee,<br><br>      Defendants and Counterclaim Plaintiff | Adv. No. 26-ap-02063-PH<br><br>(Related to Case No. 25-bk-25459-PH)<br><br>Chapter 11 |
| FIRST UTAH BANK, a Utah State Chartered Bank,<br><br>      Third-Party Plaintiff,<br><br>v.<br><br>NAGENDRA PRASAD REDDY,<br><br>      Third-Party Defendant. | Judge Peggy Hunt |

## MOTION TO DISMISS

4909-6814-6356

Pursuant to Federal Rules of Civil Procedure 7 and 12(b)(6), and Local Rule of Civil Practice DUCivR 7-1(a), as made applicable to this Adversary Proceeding by Rules 7007 and 7012 of the Federal Rules of Bankruptcy Procedure, Defendants First Utah Bank (the "**Bank**") and Michael Brown in his capacity as Successor Foreclosure Trustee (collectively, "**Defendants**") by and through counsel, move the Court to dismiss Plaintiff Plaza 106 LLC's ("**Plaza**") Amended Complaint (the "**Amended Complaint**"), Dkt. No. 18.

## RELIEF SOUGHT AND GROUNDS THEREFOR

Plaza admits it committed multiple events of default, including failing to make payments on a $2,725,000 secured loan beginning in July 2024, and yet seeks to hold the Bank liable for imagined technical errors that, even if proven, would not give right to a cause of action or right to any relief. The Court should dismiss the Amended Complaint in its entirety for failure to state a claim on which relief can be granted.

Plaza's Amended Complaint is based on two alleged transactions from its checking account with the Bank: (1) a debit of $17,705.57 in January 2025 that the Bank later refunded to Plaza's checking account, and (2) a scheduled transaction of $17,705.57 in February 2025 that the Bank subsequently canceled (the "**Alleged Transactions**"). But Plaza also alleges that the Bank refunded the transactions, so Plaza sustained no damages. Plaza relies on these two transactions as the basis for its claims against Defendants, insisting that the Bank should have unilaterally applied the funds to Plaza's outstanding loan instead of refunding Plaza's checking account.

Plaza's Complaint then takes a specious and unsupportable leap: Plaza contends that the Alleged Transactions render illegitimate the non-judicial foreclosure proceedings—the ones the Bank commenced after it cancelled the foreclosure proceedings then in process—even though

4909-6814-6356

Plaza was admittedly still in default, and no defect occurred during these proceedings. Plaza contends that the foreclosure was defective because the Bank did not credit Plaza for the Alleged Transactions. In other words, Plaza is seeking relief from non-judicial foreclosure proceedings based on the Bank's failure to credit Plaza for payments it did not make.

Not only does Plaza's theory of liability defy common sense, it fails to support any claim upon which relief can be granted for any of Plaza's eight asserted causes of action: (1) violation of the UCC Midnight Deadline pursuant to Utah Code § 70A-4-302; (2) bad faith related to the Alleged Transactions pursuant to Utah Code § 70A-4-103; (3) spoliation of evidence; (4) breach of deposit agreement; (5) breach of trustee's duty of good faith; (6) tortious interference with economic relations; (7) conspiracy to defraud trustor pursuant to Utah Code § 57-1-25(5); and (8) fraud on the Court pursuant to Federal Rule of Civil Procedure 60(d)(3). Based on these claims, Plaza seeks damages, spoliation sanctions, a declaratory judgment voiding the Bank's non-judicial foreclosure of the security for the loan, and an order vacating the Court's Order Granting the Bank's Motion for Relief from Stay (the "**Stay Order**") in the associated bankruptcy action, *Plaza 106 LLC*, Case No. 25-25459 in the United States Bankruptcy Court for the District of Utah (the "**Bankruptcy Action**").

Each of Plaza's eight claims fail as a matter of law. First, Plaza has failed to plausibly allege any damages based on the Alleged Transactions where Plaza admits that, for the first, it was fully refunded, and the second "disappeared," meaning that no money ever moved. Second, Plaza has failed to plausibly allege any relationship between the Alleged Transactions and any defect in the foreclosure proceedings where Plaza affirmatively alleges that no payment was ever made to the Loan that required credit during the foreclosure process that the Bank actually completed, *i.e.*,

4909-6814-6356

in April-May 2026.  Third, Plaza has failed to state a claim for breach of contract because it has not identified any contractual obligation that the Bank breached, causation, or damages.  Fourth, Plaza has failed to state a claim for tortious interference with economic relations because it has failed to allege that the Defendants interfered with its business relations through improper means, causation, or damages.  Fifth, Plaza's claim for spoliation fails because Utah has specifically rejected an independent cause of action for spoliation.  Finally, Plaza's claim pursuant to Federal Rule of Civil Procedure 60(d) fails because Plaza has an adequate opportunity to challenge the Stay Order in the Bankruptcy Action such that an independent claim for relief under Rule 60(d) is improper.  For all of these reasons, the Court should dismiss the Amended Complaint in its entirety.

## **RELEVANT FACTS**[1]

### A.    **Background**

1.      On July 20, 2022, Plaza entered into a Business Loan Agreement (the "**Loan Agreement**") for a total loan amount of $2,750,000.00.  *See* Dkt. No. 18, Amended Complaint (the "**Am. Compl.**") ¶ 9; *see also* Exh. A, the Loan Agreement.[2]  The loan was assigned a loan number ending in -4200 (the "**Loan**").  *See* Exh. A, the Loan Agreement.

---

[1] Solely for the purposes of the instant motion, Defendants accept as true all well-pleaded factual allegations contained in the Amended Complaint.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[2] The Court can consider exhibits attached to the instant motion without converting it to a motion for summary judgment because the exhibits were incorporated and referred to in Plaza's Amended Complaint.  *See Berneike v. CityMortgage, Inc.*, 709 F.3d 1141, 1146 (10th Cir. 2013); *see also* Am. Compl. ¶¶ 7, 9, 10, 12, 17, 22–27, 28, 34 (incorporating and referring to the attached exhibits).

4909-6814-6356

2.      Plaza also executed and delivered a Promissory Note (the "**Note**") that required 119 monthly payments of $17,705.57, and one final payment of $2,104,061.95.  Am. Compl. ¶ 10; *See* Exh. B, the Note.

3.      Plaza secured the Note with a Deed of Trust that included a security interest in real property located at 894 East 3900 South, Salt Lake City, Utah 84107 (the "**Property**").  *See* Am. Compl. ¶¶ 6, 7.

4.      In addition to the Loan that Plaza had with the Bank, Plaza also had a business checking account with the Bank.  Am. Compl. ¶ 13.

5.      Plaza stopped making payments on the Loan in July 2024.  Am. Compl. ¶ 11.

**B.      The First Notice of Default and Sale**

6.      On September 25, 2024, the Bank sent Plaza a Notice of Default – Acceleration and Demand for Payment (the "**Acceleration Notice**").  *See* Am. Compl. ¶ 12; Exh. C, Acceleration Notice.  The Acceleration Notice stated that Plaza had "an outstanding balance of $2,636,920.72" on the Loan and that it was in default of the Loan Agreement and Note.  Exh. C, Acceleration Notice.

7.      With the Acceleration Notice, the Bank exercised its right under the Note and Loan Agreement to call the outstanding balance of the Note due by October 18, 2024.  *Id.*  The Bank further notified Plaza that it "will not accept partial payments to bring th[e] [L]oan current."  *Id.*

8.      After sending the Acceleration Notice and receiving no response from Plaza, the Bank initiated and recorded a Notice of Default and Election to Sell, dated November 1, 2024 (the "**Notice of Default**").  *See* Am. Compl. ¶ 12; Exh. D, Notice of Default.

4909-6814-6356

9.      The Bank subsequently published and served a Notice of Trustee's Sale (the "**Notice of Sale**"), scheduling the Trustee's Sale for March 11, 2025.  *See* Am. Compl. ¶ 17; Exh. E, Notice of Sale.

10.     Plaza alleges that on or about February 11, 2025, it received a text message from a tenant with a picture of the Notice of Sale posted on the tenant's door at the Property. Am. Compl. ¶ 17. Plaza alleges that two tenants stopped paying rent "from that time onwards." *Id.*

11.     Plaza further alleges that the posting of the Notice of Sale "made it difficult for Plaza [] to pursue any meaningful refinancing efforts." *Id.* ¶ 29.

**C.      The Alleged Transactions**

12.     Plaza alleges that it did not authorize a single payment to the Loan after receiving the Acceleration Notice, or any time after July 2024.  *See id.* ¶¶ 14, 16, 20.

13.     Instead of making any additional payments on the Loan, Plaza alleges that it "made five separate deposits of $17,705.57 each into [its] business checking account" in late 2024 and early 2025 totaling $88,527.85. *Id.* ¶ 13.

14.     While it made these deposits into its own checking account, Plaza does not allege that it made any payments on the Loan. *Id* ¶¶ 14, 16, 20.  Rather, Plaza alleges that the Bank's automated system initiated two transactions from Plaza's checking account to the Loan account, each in the amount of $17,705.57.  *See* Am. Compl. ¶¶ 15, 20.

15.     Plaza alleges that the first transaction occurred on January 21, 2025 ("**Transaction 1**"). *Id.* ¶ 15.  Plaintiff alleges that the second transaction occurred on February 20, 2025 ("**Transaction 2**") (collectively with Transaction 1, the "**Alleged Transactions**"). *Id.* ¶ 20.

4909-6814-6356

16.     Plaza alleges that the $17,705.57 from Transaction 1 was refunded to his checking account on or about February 5, 2025.  *Id.* ¶ 15.

17.     Although Plaza alleges that with Transaction 2, the Bank's "automated system debited $17,705.57" from its checking account, an exhibit from Plaza's own cited document demonstrates that the debit was merely "scheduled" from Plaza's checking account and not completed.  *See* Am. Compl. ¶¶ 21–27 (citing *Plaza 106*, Case No. 25-25459, Bankr. Dkt. No. 83 (including in the filing an image as Exhibit 3 reflecting a scheduled payment with no description)).

18.     Plaza then alleges that on or about March 3, 2025, Transaction 2 was "completely erased from the record," that "[t]here was no reversal entry," "no refund memo," and that "[t]here was no trace of the transaction."  Am. Compl. ¶ 25.  In other words, Plaza alleges that a transaction was scheduled but that it did not happen, and now there is no trace of it, *i.e.*, because it did not happen.

19.     Plaza does not allege that the Bank failed to return any funds that were debited from Plaza's checking account as a result of Transaction 1 or Transaction 2.  That is, Plaza alleges that it was either refunded from a completed transaction, or that a scheduled transaction was "completely erased" or, more likely, never happened.  *Id.* ¶¶ 15, 25.

20.     Plaza further alleges that the funds from Transaction 1 and Transaction 2 were not applied to the Loan.  *See id.* ¶¶ 15, 23, 25, 43.  This is true, and the crux of why Plaza has no cause of action.

**D.     The Second Notice of Default and Sale**

21.     In late February 2025, the Bank cancelled the scheduled trustee's sale and recorded a cancellation of the Notice of Default, allegedly after a conversation between the Bank, Plaza,

7

and Mr. Brown related to the Alleged Transactions.  *See* Am. Compl. ¶¶ 20–22; *see also* Exh. F, Cancellation of Notice of Default.

22.     On March 11, 2025, the Bank sent Plaza a Notice of Intent to File a Notice of Default, detailing the prior notices and correspondence "in the successive months" and notifying Plaza that the Bank "now intends to pursue foreclosure proceedings."  *See* Am. Compl. ¶ 28; *see also* Exh. G, Notice of Intent to File a Notice of Default.

23.     The Bank initiated and recorded a second Notice of Default and Election to Sell on April 17, 2025 (the "**Second Notice of Default**").  *See* Am. Compl. ¶ 28; *see also* Exh. H, Second Notice of Default. The Second Notice of Default stated that "[t]he amount owed by [Plaza] to [the Bank] includes the principal balance and accrued interest in the amount of $3,000,995.32 as of April 16, 2025, together with all interest, costs, fees, and subsequent sums advanced by Lender pursuant to the terms and conditions of Note and the Deed of Trust[.]"  Exh. H, Second Notice of Default.

24.     The Bank then published and served a Notice of Trustee's Sale for a sale scheduled on September 16, 2025.  *See* Am. Compl. ¶ 28; *see also* Exh. I, Second Notice of Trustee's Sale.

**E.     The Order Granting the Bank's Motion for Relief from Stay**

25.     Plaza filed a petition for relief under chapter 11 of the United States Code (the "**Bankruptcy Code**") the day before the scheduled trustee's sale, on September 15, 2025.  *See* Am. Compl. ¶ 29; *see also Plaza 106, LLC,* Case No. 25-25459, Bankr. Dkt. No. 1, Chapter 11 Voluntary Petition.

26.     The Bank filed a Motion for Relief from Stay pursuant to section 362(d)(1) of the Bankruptcy Code (the "**Stay Motion**").  Bankr. Dkt. No. 9.

4909-6814-6356

27.     Plaza opposed the Stay Motion, Bankr. Dkt. No. 12, and the Court held an evidentiary hearing on the same, Bankr. Dkt. Nos. 32–36.

28.     After the hearing, the Court announced its ruling from the bench, Bankr. Dkt. No. 52, and entered an order granting in part and denying in party the Stay Motion (the "**Stay Order**"), Bankr. Dkt. No. 54.

29.     Plaza subsequently filed a Motion to Reconsider the Stay Order pursuant to Federal Rule of Civil Procedure 59(e).  Bankr. Dkt. No. 62.

30.     The Bank opposed the Motion to Reconsider, Bankr. Dkt. No. 80, and after a hearing the Court denied the Motion to Reconsider on April 10, 2026, Bankr. Dkt. No. 92.

**F.     Procedural History**

31.     On April 17, 2026, Plaza initiated this adversary proceeding.  *See* Dkt. 1.

32.     After Defendants filed their Answer, Counterclaim, and Third-Party Complaint against Nagendra Prasad Reddy, *see* Dkt. 13, Plaza filed the Amended Complaint, Dkt. 18.

33.     In it, Plaza asserts eight causes of action against Defendants: (1) violation of the UCC Midnight Deadline pursuant to Utah Code § 70A-4-302; (2) bad faith related to the Alleged Transactions pursuant to Utah Code § 70A-4-103; (3) spoliation of evidence; (4) breach of deposit agreement; (5) breach of trustee's duty of good faith; (6) tortious interference with economic relations; (7) conspiracy to defraud trustor pursuant to Utah Code § 57-1-25(5); and (8) fraud on the Court pursuant to Federal Rule of Civil Procedure 60(d)(3).

## LEGAL STANDARD

Under Federal Rule 12(b)(6), made applicable in adversary proceedings through Bankruptcy Rule 7012, a Bankruptcy Court must dismiss a complaint if it fails to "state a claim

4909-6814-6356

upon which relief can be granted." To avoid dismissal under Federal Rule 12(b)(6), a plaintiff must allege in the complaint "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its fact." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At this stage, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Gaddy v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, 148 F.4th 1202, 1209–10 (10th Cir. 2025). But it does not need to "accept as true a complaint's conclusory allegations, unwarranted inferences, or legal conclusions." *Id.*

## ARGUMENT

### I. THE COURT SHOULD DISMISS PLAZA'S CLAIMS BECAUSE IT FAILS TO PLAUSIBLY ALLEGE ANY DAMAGES ARISING FROM THE ALLEGED TRANSACTIONS.

Despite being fully refunded for the Alleged Transactions, Plaza asserts the following claims against Defendants seeking monetary damages: (1) Count 1 – violation of the UCC Midnight Deadline pursuant to Utah Code § 70A-4-302; (2) Count 2 – bad faith pursuant to Utah Code § 70A-4-103; (3) Count 4 – breach of deposit agreement; and (4) Count 6 – tortious interference with economic relations. Am. Compl. ¶¶ 45–48, 55–57, 65–68. The Bank's refund of the deposited funds to Plaza's checking account, however, is dispositive of each claim.

#### A. The Damages for Plaza's "Midnight Deadline" Claim Are Refunds, which Plaza Already Received.

As to the first claim, violation of the UCC Midnight Deadline, the statute limits the recovery "to the amount of the late check." *See In re Castletons, Inc.*, 990 F.2d 551, 558 (10th Cir. 1993). Even Plaza acknowledges that as a result of this statute, the Bank could be "liable for the face amount of" the Alleged Transactions. Am. Compl. ¶ 41. But here, Plaza has alleged that its

10

4909-6814-6356

checking account was fully refunded for Transaction 1, and that the scheduled Transaction 2 was "completely erased"—*i.e.* there was no record of the funds ever leaving Plaza's checking account. *See* Am. Compl. ¶¶ 15, 25.  Because the Bank has already refunded Plaza for the funds that were allegedly debited from Plaza's checking account (or they were never taken in the first place), Plaza fails to plausibly allege any additional recovery it could receive based on its first cause of action. *See Castletons*, 990 F.2d at 558.  Accordingly, the Court should dismiss Plaza's first claim with prejudice.[3]

**B.        The Damages for the Other Claims Cannot Follow from the Facts Alleged.**

For the three remaining claims—bad faith, breach of contract, and tortious interference with economic relations—Plaza must also plausibly allege damages.  *See* Utah Code § 70A-4-103(5) (identifying the measure of damages for a breach of the duty of good faith or failure to exercise ordinary care); *Arrow Industries, Inc. v. Zions First Nat. Bank*, 767 P.2d 935, 941 (Utah 1988) (J. Zimmerman concurring) (noting that a claimant must adequately allege damages resulting from a breach of the duty stemming from Utah Code § 70A-4-103); *Daz Management, LLC v. Honnen Equipment Co.*, 2022 UT 15, ¶ 29 n.26, 508 P.3d 84 (noting that "[t]he elements of a prima facie case for breach of contract" include "damages"); *Eldridge v. Johndrow*, 2015 UT 21, ¶ 70, 345 P.3d 553 (requiring a claimant asserting a tortious interference to allege "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) . . . by improper means, (3) causing injury to the plaintiff").

---

[3] To the extent that Plaza seeks to recover the balance of the Alleged Transactions as damages for any other claim against the Defendants, that claim would fail for the same reason—*i.e.* Plaza has alleged that it was refunded for the amounts allegedly debited from its checking account.  *See* Am. Compl. ¶¶ 15, 25.

4909-6814-6356

Although unclear, beyond seeking a refund for the Alleged Transactions that Plaza has already received, Plaza seems to assert two general theories of damages based on the Alleged Transactions.  First, Plaza alleges that it was damaged based on the Bank's refunding of the Alleged Transactions to Plaza's checking account instead of applying the funds to the Loan.  *See* Am. Compl. ¶¶ 42, 46, 47, 56, 61, 71.  Second (and contradictorily), Plaza alleges that it was damaged because the foreclosure was eventually completed despite Plaza making two payments on the Loan.  *See id.* ¶¶ 61, 67, 71, 90.  Neither theory is supported by facts plausibly alleged in the Amended Complaint.

Turning to Plaza's first theory, Plaza fails to plausibly allege that the Bank was authorized to credit the Loan as a result of the Alleged Transactions instead of refunding the Alleged Transactions to Plaza's checking account.  That is, Plaza does not allege that it authorized the Bank to make any Loan payment after July 2024.  *See* Am. Compl. ¶ 11; *see generally* Am. Compl. To the contrary, Plaza alleges that it did <u>not</u> authorize the Alleged Transactions at all, let alone that it authorized the Alleged Transactions for the purpose of making a payment on the Loan.  *See* Am. Compl. ¶¶ 15, 20.  Instead, Plaza alleges that the Alleged Transactions were the result of the Bank's "automated system" that debited funds from Plaza's checking account.  *Id.*  To remedy this alleged error, Plaza avers that the Bank refunded the checking account and canceled the scheduled transaction.  *Id.* ¶¶ 15, 25.  Plaza has failed to allege any basis for the Bank to have applied the funds to the Loan instead of refunding Plaza's checking account.  *See id.*  That is, there are no facts to support Plaza's contention that the Bank was obligated to apply the unauthorized debits to the Loan instead of refunding Plaza's checking account.  Indeed, failing to refund Plaza's checking account with the amounts from the Alleged Transaction could expose the Bank to liability under

12

4909-6814-6356

some of the same UCC sections Plaza relies on here.  *See Castletons*, 990 F.2d at 558.  Without alleging any facts to support Plaza's contention that the Bank was obligated to apply the funds from the Alleged Transactions to the Loan, instead of refunding Plaza's checking account, Plaza has failed to plausibly allege any damages based on the Bank's failure to do so.

Turning to Plaza's second theory, Plaza further fails to plausibly allege that it was damaged based on the Bank's failure to stop the foreclosure proceedings permanently because of the Alleged Transactions.  This claim fails, too, because Plaza affirmatively alleges that it did not make any payments to the Loan after July 2025, meaning, it never cured the default and paid the loan, so the Bank had a right to foreclose when it did.  *See* Am. Compl. ¶¶ 11, 15, 23–25.  Instead, Plaza alleges that the Bank refunded its checking account for the Alleged Transactions and erased the pending transaction.  *Id.* ¶¶ 15, 25.  Where no payment was made to the Loan, Plaza has failed to plausibly allege that it had any defense to or that there was any defect in the foreclosure proceedings based on the failure to reflect any such payment.  In other words, the documents recorded and posted during the foreclosure proceedings, including the Second Notice of Default and Second Notice of Sale, did not reflect any additional Loan payments because Plaza admittedly did not make any additional Loan payments, much less pay the accelerated balance of the Loan.  Accordingly, Plaza has failed to allege any damage related to the foreclosure proceedings based on the Alleged Transactions.

In summary, Plaza admits that it was fully refunded for the Alleged Transactions, that it did not pay the Loan when due, and that the proceeding in which the Property was actually foreclosed on was without defect.  Without monetary damages, or damages based on the Bank's failure to perform an authorized transaction, or a defense to the Bank's actual foreclosure, Plaza

4909-6814-6356

has failed to plausibly allege any damage as a result of the Alleged Transactions. This failure is fatal to Plaza's claims. The Court should dismiss these claims for failure to state a claim for which relief may be granted.

## II. THE COURT SHOULD DISMISS PLAZA'S CLAIMS SEEKING RELIEF RELATED TO THE FORECLOSURE PROCEEDINGS BECAUSE IT HAS FAILED TO PLAUSIBLY ALLEGE ANY DEFECT IN THE PROCEEDINGS.

For the same reasons that Plaza fails to allege any damages based on the Bank's failure to credit Plaza for the Alleged Transactions during the foreclosure proceedings, Plaza has further failed to allege any basis for the relief it seeks to void those proceedings. Specifically, with the following claims, Plaza asks the Court to void the non-judicial foreclosure because the proceedings failed to credit Plaza for the Alleged Transactions: (1) Count 2 – bad faith pursuant to Utah Code § 70A-4-103; (2) Count 4 – breach of deposit agreement; (3) Count 5 – breach of trustee's duty of good faith; (4) Count 6 – tortious interference with economic relations; Count 7 – conspiracy to defraud trustor pursuant to Utah Code § 57-1-25(5).

Based on Plaza's own allegations, the relief Plaza seeks—voiding the non-judicial foreclosure proceedings—cannot be granted. Plaza alleges that it did not authorize the Alleged Transactions in the first instance. Am. Compl. ¶¶ 15, 20. Further, Plaza alleges that the Bank did not credit the Loan as a result of the Alleged Transactions. *See id.* ¶¶ 23–25. Instead, the Bank refunded or cancelled the debit from Plaza's checking account (i.e., the transaction never happened). *Id.* ¶¶ 15, 25. As a result, the foreclosure proceedings did not reflect any credit related to the Alleged Transactions because Plaza did not make any payment to the Loan. That is, Plaza has failed to plausibly allege any basis for the Bank to have reflected a credit on the Loan by affirmatively alleging that it did not make any payments for the Bank to credit.

14

4909-6814-6356

Based on this failure, the Court should dismiss Plaza's claims seeking to void the foreclosure proceedings based on the alleged defect of failing to reflect a credit for payment: (1) Count 2 – bad faith; (2) Count 4 – breach of deposit agreement; (3) Count 5 – breach of trustee's duty of good faith; (4) Count 6 – tortious interference with economic relations; Count 7 – conspiracy to defraud trustor pursuant to Utah Code § 57-1-25(5).

## III.    THE COURT SHOULD DISMISS PLAZA'S BREACH OF CONTRACT CLAIM BECAUSE IT FAILED TO PLAUSIBLY ALLEGE A BREACH.

Beyond Plaza's breach of contract claim failing as a matter of law for the failure to plausibly allege any damages as a result of the Alleged Transactions, Plaza has further failed to plausibly allege that the Bank breached any contractual obligation.  In one conclusory allegation, Plaza insists that the Bank "breached the deposit agreement by reversing Transaction 1 without authorization, deleting Transaction 2 without any accounting entry, and blocking Debtor's access to the online banking portal during the period of alteration."  Am. Compl. ¶ 56.  With this single allegation, Plaza has failed to allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its fact."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaza's Amended Complaint is devoid of factual allegations that the Bank had any obligations under any agreement that it breached.  The threadbare statement contained in Paragraph 56 of the Amended Complaint does not point to any provision in any agreement.  Specifically, Plaza fails to allege any obligations regarding refunding erroneous transactions, cancelling scheduled transactions, correcting bank records, and customer access to an online banking portal that the Bank breached.  *See id.* ¶¶ 55–57.

Accordingly, in addition to dismissing Plaza's breach of contract claim for the failure to allege any damages related to the Alleged Transactions, the Court should dismiss the claim because it does not identify a contractual obligation that the Bank allegedly breached.

**IV.    THE COURT SHOULD DISMISS PLAZA'S TORTIOUS INTERFERENCE CLAIM BECAUSE IT FAILED TO ALLEGE ANY IMPROPER MEANS.**

A tortious interference claim in Utah requires the plaintiff to plausibly allege "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) by improper means, (3) causing injury to the plaintiff." *Eldridge v. Johndrow*, 2015 UT 21, ¶ 70, 345 P.3d 553. For this cause of action, "improper means" is defined as "conduct contrary to law—such as violations of statutes, regulations, or recognized common-law rules—or the violation of an established standard of a trade or profession." *Mackey v. Krause*, 2025 UT 37, ¶ 105, 575 P.3d 1162.

Plaza alleges that the Bank intentionally interfered with its economic relations through improper means by posting the Notice of Sale on the tenant doors at the Property. Am. Compl. ¶¶ 17, 66. It is incorrect. Not only is posting notice of a trustee's sale at the subject property consistent with Utah law—it is specifically required before a trustee's sale. *See* Utah Code § 57-1-24(3) (requiring the trustee to "give notice of sale as provided in Sections 57-1-25 and 57-1-26" before exercising its power of sale); Utah Code § 57-1-25(1)(b)(ii)(A) (requiring the trustee to "give notice of the time and place of sale particularly describing the property to be sold . . . by posting the notice . . . in some conspicuous place on the property to be sold"). Because the Bank's posting of the Notice of Sale at the Property was not "contrary to law," Plaza has failed to allege that the Bank interfered with its economic relations through improper means.

16

Put differently, if Plaza's claim that posting a notice of sale on the property prior to foreclosure where, as here, there is an admitted default, could give rise to lender liability for tortious interference, no lender can ever safely foreclose on its real property collateral. Accordingly, the Court should dismiss Plaza's tortious interference claim for its failure to allege improper means.

**V.     THE COURT SHOULD DISMISS PLAZA'S THIRD CLAIM BECAUSE UTAH HAS REJECTED SPOLIATION AS AN INDEPENDENT TORT.**

In addition to the other bases to dismiss this claim, Plaza fails to assert any cognizable legal theory with its third cause of action for spoliation of evidence because Utah has refused to adopt an independent tort of spoliation. *See Hills v. United Parcel Serv.*, Inc., 2010 UT 39, ¶ 30, 232 P.3d 1049 (declining to recognize an independent claim for spoliation but leaving open the question of whether Utah "would adopt a tort of third-party spoliation under different facts"); *Diversified Concepts LLC v. Koford*, 2021 UT App 71, ¶ 18, 495 P.3d 755 (noting "the Utah Supreme Court has expressly rejected spoliation as a standalone cause of action"); *see also Trepanier v. United States*, No. 2:20-CV-00615-BSJ, 2021 WL 2268875, at *4 (D. Utah June 3, 2021) (noting that "in Utah, there is no cause of action in tort for spoliation of evidence"); *In re Weston*, Case No. 033100174, 2014 WL 4774368 *3 (State District Court of Utah, Aug. 18, 2014) (unpublished); *Harris v. Mutti*, Case No. 150904953, 2016 WL 11575162, *2 (State District Court of Utah, July 22, 2016) (unpublished).  Because Plaza's spoliation claim is "not recognized by Utah," the Court should dismiss the claim with prejudice.  *See Trepanier*, 2021 WL 2268875, at *5.

4909-6814-6356

## VI.    THE COURT SHOULD DISMISS PLAZA'S EIGHTH CLAIM BECAUSE IT IS BARRED BY RES JUDICATA AND PLAZA CAN SEEK RELIEF FROM THE STAY ORDER IN THE PENDING BANKRUPTCY PROCEEDING.

Plaza's eighth cause of action seeks reversal of the Stay Order pursuant to Federal Rule of Civil Procedure 60(d)(3), alleging that it was "procured by fraud on the Court." *See* Am. Comp. ¶¶74–91; *see also* Prayer for Relief A. Rule 60(d) provides that a court has the power to "entertain an independent action to relieve a party from a judgment, order, or proceeding" and "set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(1), (3).[4]

The Court already held a hearing on a Motion for Reconsideration under Rule 59(e), which was fully briefed, and overruled on its merits. Bankr. Dkt. Nos. 62, 80, 92. Plaza's remedy is not to seek the same relief again in an adversary proceeding, but rather, to file an appeal, which it failed to do.

Regardless, Plaza has not pleaded the elements required for reversal under Rule 60(d). Independent actions filed in a separate court pursuant to this rule "are a 'narrow avenue,' permitting equitable relief on grounds allowed before the adoption of the federal rules." *Wellington v. MTGLQ Invs., LP*, No. 23-2101, 2024 WL 1573948, at *2 (10th Cir. Apr. 11, 2024) (unpublished) (citing *United States v. Beggerly*, 524 U.S. 38, 45, 46 (1998); *Robinson v. Volkswagenwerk AG*, 56 F.3d 1268, 1274 (10th Cir. 1995) (citation omitted)).

"Parties seeking relief from a judgment through an independent action generally must satisfy the following three elements: (1) show that they have no other available or adequate remedy; (2) demonstrate that movants' own fault, neglect, or carelessness did not create the

---

[4] Federal Rule of Civil Procedure 60 is made applicable to this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 9024(a).

situation for which they seek equitable relief; and (3) establish a recognized ground—such as fraud, accident, or mistake—for the equitable relief." *In re Mucci*, 488 B.R. 186, 195–96 (Bankr. D.N.M. 2013) (citations omitted); *see also Winfield Associates, Inc. v. Stonecipher,* 429 F.2d 1087, 1090 (10th Cir.1970); *Wellington*, 2024 WL 1573948, at *2. These elements attempt to ensure that independent actions under Rule 60(d) are "reserved for those cases of 'injustices which, in certain instances, are deemed sufficiently gross to demand a departure' from rigid adherence to the doctrine of res judicata." *Mucci*, 488 B.R. at 196 (citing *United States v. Beggerly,* 524 U.S. 38, 46 (1998); *United States v. Buck,* 281 F.3d 1336, 1341 (10th Cir. 2002)). "[A] 'grave miscarriage of justice' is a 'stringent' and 'demanding' standard." *Id.* (citations omitted). "Further, it must appear that the party seeking relief based upon an independent equitable action could not have, by exercising proper diligence, had an adequate remedy at law, or have proceeded in the original action to otherwise obtain relief from the judgment." *Id.* (citing *Stonecipher,* 429 F.2d at 1090).

Plaza's independent claim pursuant to Rule 60(d) fails to clear the first hurdle. That is, as a party to the pending bankruptcy action, Plaza has a variety of "other available or adequate remed[ies]" beyond filing an independent action under Rule 60(d) to challenge the Stay Order. These remedies include filing a motion under Rule 60(b) or 59(e) to seek relief from the Stay Order (which it did); filing an interlocutory appeal of the Stay Order, or the order denying Plaza's Motion to Reconsider the Stay Order; and appealing the Stay Order after a final judgment is entered in the bankruptcy proceeding. Where Plaza is a party to the ongoing bankruptcy proceedings, it has failed to demonstrate that an independent claim pursuant to Rule 60(d) is appropriate. Because Plaza's independent claim for relief pursuant to Rule 60(d) is improper, the Court should dismiss the same with prejudice.

19

4909-6814-6356

## CONCLUSION

For the reasons set forth above, the Court should dismiss Plaza's Amended Complaint in its entirety.

DATED: June 16, 2026

PARSONS BEHLE & LATIMER

/s/

Brian M. Rothschild
Zack L. Winzeler
Whitney E. McKiddy

*Attorneys for Defendants, Counterclaim
Plaintiff, and Third-Party Plaintiff*

4909-6814-6356

## CERTIFICATE OF SERVICE BY ELECTRONIC NOTICE (CM/ECF)

I hereby certify that on June 16, 2026, I electronically filed the foregoing **MOTION TO DISMISS** with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system. I further certify that the parties of record in this case, as identified below, are registered CM/ECF users.

**Brody Valerga on behalf of Plaintiff Plaza 106, LLC**
brodyvalerga@gmail.com, brodyvalerga@gmail.com

*/s/*
Whitney E. McKiddy

4909-6814-6356