Brody Valerga (USB #11789)
VALERGA LLP
395 South Main Street, Suite 201
Alpine, UT 84004
Telephone: (801) 893-3635
Facsimile: (801) 396-7164
Email: brody@valergalawyers.com
Special Counsel for the Debtor in Possession / Plaintiff

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re:<br><br>**PLAZA 106, LLC,**<br><br>        Debtor in Possession. | Bankruptcy No. 25-bk-25459-PH<br><br>Chapter 11<br><br>Hon. Peggy Hunt |
| **PLAZA 106, LLC,**<br><br>        Plaintiff and Counterclaim Defendant,<br>v.<br><br>**FIRST UTAH BANK, a Utah state-chartered bank; and MICHAEL R. BROWN, in his capacity as Successor Foreclosure Trustee,**<br><br>        Defendants and Counterclaim Plaintiff,<br><br>**FIRST UTAH BANK, a Utah State Chartered Bank,**<br>        Third-Party Plaintiff,<br>v.<br><br>**NAGENDRA PRASAD REDDY,**<br>        Third-Party Defendant. | Adversary Proceeding No. 26-02063 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
(DKT. NO. 27) AND REQUEST THAT THE MOTION BE HELD IN ABEYANCE
PENDING THE DISTRICT COURT'S DECISION ON THE MOTION TO
WITHDRAW THE REFERENCE**

Plaintiff Plaza 106, LLC ("Plaza 106" or the "Debtor"), by and through special counsel, respectfully submits this Memorandum in Opposition to the Motion to Dismiss (Dkt. No. 27, the "Motion") filed by Defendants First Utah Bank ("FUB" or the "Bank") and Michael R. Brown (together, "Defendants"). This Opposition is submitted expressly subject to, and without waiver of, Plaza 106's Notice of Non-Consent (Dkt. No. 20). As its primary request, Plaza 106 asks the Court to hold the Motion in abeyance pending the District Court's decision on the pending Motion to Withdraw the Reference; in the alternative, the Motion should be denied, and any count found deficient should be dismissed without prejudice and with leave to amend.

## PRELIMINARY STATEMENT

1. The Motion rests on two premises, each Defendants' version of disputed facts rather than a pleading defect: that the February 20, 2025 debit of $17,705.57 ("Transaction 2") "never happened" (Mot. ¶¶ 17–19), and that Plaza 106 was "fully refunded" (Mot. at 10–11). The Amended Complaint (Dkt. No. 18) alleges the opposite: both debits occurred; the first was reversed fifteen days after becoming final; the second was deleted without any reversal entry, refund memo, or trace during a portal lockout; and the loan then showed a shortfall of exactly two payments — $35,411.14. Am. Compl. ¶¶ 13–25, 33, 89. On a Rule 12(b)(6) motion those allegations, not Defendants' narrative, control.

2. Reservation of non-consent. This Opposition is submitted expressly subject to, and without waiver of, the Debtor-Plaintiff's Notice of Non-Consent (Dkt. No. 20). Pursuant to Federal Rules of Bankruptcy Procedure 7008 and 7012(b) and 28 U.S.C. § 157(c)(1), Plaza 106 does not consent to the entry of final orders or judgment by the Bankruptcy Court in this adversary proceeding, and, pursuant to 28 U.S.C. § 157(e) and Federal Rule of Bankruptcy Procedure 9015, does not consent to the conduct of a jury trial by the Bankruptcy Court. Plaza 106's jury demand

2

(Dkt. No. 18 at 18) stands and is expressly preserved. Neither this Opposition, nor the request for abeyance made herein, nor any other act of litigating in this proceeding constitutes consent to the entry of final orders or judgment by the Bankruptcy Court or a waiver of the Debtor's demand for a jury trial.

3.      The Motion attributes to the Amended Complaint allegations it does not contain and omits ones it does — asserting no post-July-2024 payment authorization and a refund of both transactions. The pleading is contrary on each point, as Part III details. Tellingly, Defendants' own Answer admits the three-hour February 20, 2025 meeting at their counsel's offices (Dkt. No. 13, Answer ¶ 21) while denying that the transaction discussed there existed (id. ¶¶ 20–21) — a factual dispute for discovery, not a pleading defect.

4.      On Count 8, the Motion briefs the wrong rule: its Section VI argues the elements of the Rule 60(d)(1) independent action — "no adequate remedy," movant fault, res judicata — while Count 8 is pleaded under Rule 60(d)(3), fraud on the court, a distinct doctrine that contains no adequate-remedy element and exists to pierce the very finality the Motion invokes. Part XI develops this.

5.      Finally, the Motion asks this Court to resolve, on the pleadings, claims that Plaza 106 contends must be finally adjudicated — and tried to a jury — in the District Court, where its Motion to Withdraw the Reference (Dkt. No. 19; Case No. 2:26-cv-00521-TC) is pending. Part I explains why deferral is the orderly course and costs Defendants nothing.

6.      Accordingly, Plaza 106 requests that the Court (i) hold the Motion in abeyance (or, in the alternative, stay its determination under Rule 5011(c)) pending the District Court's decision on withdrawal; (ii) failing that, deny the Motion; and (iii) as to any count found deficient, grant leave to amend under Rule 15(a)(2).

3

### I. THE COURT SHOULD HOLD THE MOTION IN ABEYANCE PENDING THE DISTRICT COURT'S DECISION ON THE MOTION TO WITHDRAW THE REFERENCE

7.   On June 2, 2026, Plaza 106 moved to withdraw the reference in its entirety under 28 U.S.C. § 157(d) and Rule 5011(a): the proceeding is dominated by legal money-damages claims on which Plaza 106 has timely demanded a jury; no party has consented under § 157(e) to a jury trial below; under *Stern v. Marshall*, 564 U.S. 462 (2011), this Court may not finally adjudicate these non-core claims without the withheld consent; and judicial economy favors a single Article III forum. Dkt. No. 19. The motion was transmitted June 4, 2026 (Dkt. Nos. 21, 23) and is pending as Case No. 2:26-cv-00521-TC, where briefing concludes July 6, 2026.

8.   The Motion is a dispositive attack on those same claims. If the reference is withdrawn, the Rule 12(b)(6) questions will be decided once, by the Article III court that will try the case; if this Court decides them first, the parties face overlapping rulings in two courts on identical pleading questions.

9.   Plaza 106's withheld consent compounds the inefficiency. Because Plaza 106 does not consent to final orders by this Court (Dkt. Nos. 18 ¶ 2, 20), an order granting the Motion as to any non-core or *Stern* claim would be treated as proposed findings reviewed de novo by the District Court. 28 U.S.C. § 157(c)(1); *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25 (2014). Ruling on withdrawal first avoids that duplication.

10.   The June 4 transmittal placed the withdrawal question — not this proceeding — before the District Court; the adversary proceeding remains pending here, and no stay is presently in place. Rule 5011(c) provides that a withdrawal motion "shall not stay" the proceeding but authorizes a stay "on such terms and conditions as are proper," on motion to the bankruptcy judge first. Plaza 106 accordingly requests either (a) deferral of a ruling on the Motion — an exercise of

the Court's inherent power to control its docket, *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) — or (b) a Rule 5011(c) stay limited to the Motion pending the withdrawal ruling.

11.   Defendants forfeit nothing by deferral. Their obligation to answer is already suspended while the Motion pends, Fed. R. Civ. P. 12(a)(4) (via Fed. R. Bankr. P. 7012); their counterclaims proceed on their own track; no scheduling order or trial date exists; and the withdrawal motion will be fully briefed within three days. Nor is any briefing wasted: this Opposition completes the briefing, so if the reference is withdrawn the fully briefed Motion travels with the record to the District Court, and if withdrawal is denied this Court decides it on the same record. Either way, one court decides it once.

12.   Conversely, denying abeyance invites waste: two courts construing the same eight counts, potential inconsistency between this Court's Rule 12 analysis and the District Court's de novo review, and disputes over which rulings were final. Where a timely withdrawal motion raising jury-trial and *Stern* grounds is pending and nearly briefed, sequencing the forum question first is the orderly course.

13.   Because the Court directed a substantive response by today (Dkt. No. 30), Plaza 106 does not rest on the abeyance request alone: Parts II through XII oppose the Motion in full on the merits, in the alternative, and without waiver of the non-consent stated in Paragraph 2 — so that whichever court decides the Motion does so on a complete record.

14.   For these reasons, the Court should hold the Motion in abeyance, or stay its determination under Rule 5011(c), pending the District Court's decision in Case No. 2:26-cv-00521-TC.

## II. LEGAL STANDARD (IN THE ALTERNATIVE)

15. To survive Rule 12(b)(6) (via Rule 7012), a complaint need only plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court accepts the well-pleaded allegations as true and construes them most favorably to the plaintiff. *Gaddy v. Corp. of the President*, 148 F.4th 1202, 1209–10 (10th Cir. 2025) (cited at Mot. at 10). Where the pleaded facts permit competing inferences, Rule 12(b)(6) is not the stage to choose between them.

16. Rule 8(d) independently forecloses much of the Motion. A party "may set out 2 or more statements of a claim . . . alternatively," and "may state as many separate claims . . . as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(2)–(3). The Motion's repeated charge that Plaza 106 pleads "contradictorily" (Mot. at 12) describes pleading in the alternative — which the Rules expressly permit.

17. The Motion's "refund" and "res judicata" arguments are affirmative defenses argued from Defendants' characterization of the record, not from the face of the Amended Complaint.

18. Plaza 106 does not contest that the Court may consider the referenced loan documents without conversion, their authenticity being undisputed. But documents are considered for what they say; where an exhibit is ambiguous or silent — such as the image Defendants call a merely "scheduled" transaction (Mot. ¶ 17) — the inference belongs to the pleader. Defendants' gloss on an image is argument, not an admission.

19. Finally, the Motion nowhere invokes Rule 9(b). No count is challenged for want of particularity, and Defendants have therefore raised no such ground in this Motion.

6

## III. THE MOTION RESTS ON THREE MISCHARACTERIZATIONS OF THE AMENDED COMPLAINT

### A. "No Authorization" — the Amended Complaint Alleges a Standing Auto-Debit Authorization and a Loan-Payment Memo Line.

20. The Motion's damages theory begins from the premise that Plaza 106 alleged no authorization for the Bank to apply funds to the Loan rather than refund the checking account. Mot. at 12. The pleading alleges precisely that basis: five deposits of $17,705.57 (totaling $88,527.85) into "the same account subject to the auto-debit authorization under the Loan Agreement," each matching the portal's monthly payment amount, after which the Bank's automated system debited that amount under a memo line describing it as payment for loan 4200. Am. Compl. ¶¶ 13, 23. That Mr. Reddy did not personally press the button (id. ¶¶ 15, 20) shows who executed the debits — the Bank's system — not an absence of authority; the only proper disposition of the finalized debits was application to the Loan.

21. What the authorization required is in any event a question about agreements Defendants drafted and hold, not one resolvable against the pleader on a motion to dismiss. And under Rule 8(d)(2)–(3), Plaza 106 may plead both that it did not initiate the debits and that, once finalized, they were payments the Bank was obliged to credit.

### B. "Transaction 2 Never Happened" — the Amended Complaint Pleads Its Occurrence, Its Discussion, Its Deletion, and Its Arithmetic Footprint.

22. The Motion's account of Transaction 2 — "merely 'scheduled'" and "did not happen" (Mot. ¶¶ 17–18) — is Defendants' narrative, not the pleading. The Amended Complaint alleges that on February 20, 2025 "FUB's automated system debited $17,705.57" (Am. Compl. ¶ 20); that the same day Reddy, Brown, Vice President Don Rudy, and Dillon George discussed "[b]oth Transaction 1 and Transaction 2" for three hours (id. ¶ 21) — a meeting the Answer admits (Answer ¶ 21); that on February 28 the portal was disabled and Brown said the Bank was "now

7

working on Transaction 2" (id. ¶ 24); that when access returned about March 3, Transaction 2 "had been completely erased," with "no reversal entry," "refund memo," or "trace" (id. ¶ 25); and that the loan later showed a shortfall of "exactly $35,411.14" (id. ¶¶ 33, 89).

23.   Defendants may not obtain dismissal by denying these allegations. That a screen image shows "a scheduled payment with no description" (Mot. ¶ 17) proves nothing: a record stripped of its description is what the Amended Complaint alleges a deletion looks like. Which inference is correct is for discovery — into records Defendants allegedly altered, under the seven-year retention duty of § 70A-4-406 (Am. Compl. ¶ 50). On this Motion, Plaza 106's inference controls.

**C. "Fully Refunded" — the Refund Is Alleged Only as to Transaction 1, and the Refund Itself Is the Violation Pleaded.**

24.   The no-damages argument depends on the assertion that Plaza 106 "was fully refunded." Mot. at 13. The Amended Complaint alleges a "Payment Refund" only as to Transaction 1, fifteen days late (Am. Compl. ¶ 15); as to Transaction 2, deletion without any reversal entry or refund memo (id. ¶ 25); and a loan account short exactly two payments (id. ¶¶ 33, 89).

25.   As to Transaction 1, the fifteen-days-later reversal is not a cure; it is the conduct sued upon. The item became final at midnight on January 22, 2025 under § 70A-4-215, and the Bank's unilateral reversal of it — while advancing a foreclosure whose default figures the payment reduced — violated §§ 70A-4-302 and 70A-4-103. Am. Compl. ¶¶ 15, 39, 46. "Payment" or restoration is an affirmative defense, not established on the face of a complaint that pleads the reversal itself as wrongful.

26.   Each of the Motion's three premises — no authorization, no Transaction 2, full refund — contradicts the pleading, and the arguments built on them fail with them.

8

### IV. COUNTS 1 AND 2 STATE CLAIMS UNDER UTAH'S UNIFORM COMMERCIAL CODE

**A.  Count 1: Section 70A-4-302 Accountability Is Pleaded, and *Castletons* Defines — Rather than Defeats — the Recovery Count 1 Seeks.**

27.  Utah Code § 70A-4-302 makes a payor bank strictly "accountable for the amount of" a demand item, "whether properly payable or not," if it fails to pay, return, or dishonor the item by its midnight deadline — no negligence required. The Amended Complaint pleads each element as to both debits: presentment and receipt by FUB as payor bank; finality under § 70A-4-215 at midnight on January 22 and February 21, 2025; and failure to return by the deadline — a fifteen-day-late reversal as to Transaction 1, no return at all as to Transaction 2. Am. Compl. ¶¶ 36–41.

28.  Defendants' reliance on *In re Castletons, Inc.*, 990 F.2d 551, 558 (10th Cir. 1993), limiting § 4-302 recovery "to the amount of the late check" (Mot. at 10), defeats nothing: Count 1 seeks exactly that — $35,411.14, the face amount of the two finalized payments (Am. Compl. ¶ 41). *Castletons* defines the recovery Count 1 requests; it does not erase it.

29.  The remaining step — that the "refund" extinguishes even that recovery — fails for the reasons in Part III.C: no refund of Transaction 2 is alleged, and whether a unilateral reversal of a payment final for fifteen days discharges statutory accountability requires the deposit agreement, the item records, and testimony. It cannot be resolved on the pleadings, least of all in favor of the party alleged to have deleted the records. Dismissal of Count 1 — let alone with prejudice — would be error.

**B. Count 2: Section 70A-4-103 Expressly Authorizes Consequential Damages for Bad Faith, and the Causal Chain Is Pleaded — Including in the Motion's Own Statement of Facts.**

30.  Count 2 does not depend on the item-amount measure at all. Section 70A-4-103(5) — the very provision the Motion cites (Mot. at 11) — supplies the measure: the item amount for want

9

of ordinary care, and "where there is also bad faith," "any other damages the party suffered as a proximate consequence." Accord Am. Compl. ¶ 48. The Motion quotes the ordinary-care clause and omits the bad-faith sentence. Because Count 2 pleads bad faith, consequential damages are expressly available, and the *Castletons* item-amount cap — a § 4-302 measure — is beside the point.

31.   The bad-faith allegations are concrete: reversal of a finalized payment while the Bank was "actively advancing a foreclosure" (Am. Compl. ¶ 46); a second identical debit deleted during a portal lockout (id. ¶¶ 47, 24–25); and default figures crediting neither payment (id. ¶¶ 42–43, 61). Whether that was bad faith is a paradigmatic fact question.

32.   So is proximate cause. The pleaded chain runs from finalized-but-uncredited payments to an overstated default, to defective notices posted on tenant doors, to Suites B and C ceasing rent, to a non-performing property, to the collapse of the refinancing exit the Bank's own Mr. George proposed, to Chapter 11 and foreclosure on overstated figures. Am. Compl. ¶¶ 17, 22, 29, 46–48, 57, 68. Each link is a factual allegation entitled to the presumption of truth.

33.   Defendants' own Statement of Facts concedes the causal link their Argument calls implausible: the Bank cancelled the first scheduled sale "allegedly after a conversation . . . related to the Alleged Transactions." Mot. ¶ 21. Its Vice President testified the cancellation was caused by "a payment that was taken . . . done in mistake by the bank and reversed . . . that's what caused the foreclosure to be restarted." Am. Compl. ¶ 31 (quoting Tr. at 85; Bankr. Dkt. No. 83, Ex. 2). A bank does not cancel a foreclosure over a transaction that never happened; on Defendants' own submission, the Alleged Transactions moved the foreclosure — twice.

34.   The Motion's remaining causation points are jury arguments. The March 11, 2025 Notice of Intent and April re-notice (Mot. ¶¶ 22–23) do not negate causation; they are the Bank's

own acts of restarting foreclosure on the same uncredited figures — a superseding-cause narrative for the trier of fact. And that Plaza 106 was in payment default (Am. Compl. ¶ 11) does not validate notices overstating that default by $35,411.14: the existence of a default and the accuracy of its stated amount are different questions, and Rule 8(d) lets Plaza 106 litigate both.

35.  The same analysis disposes of the Motion's footnote extending the refund argument to every count (Mot. at 11 n.3): the premise — full restoration — is not pleaded, and Counts 2, 4, and 6 seek consequential damages.

36.  Nor does Defendants' suggestion that crediting the Loan would have exposed the Bank to liability (Mot. at 12–13) support dismissal: whether the Bank faced competing obligations is a merits defense about its own agreements, which it holds.

37.  Counts 1 and 2 state claims. The Motion should be denied as to both.

**V. THE "NO DEFECT" ARGUMENT (MOTION § II) ADOPTS DEFENDANTS'**

**VERSION OF THE FACTS**

38.  Motion Section II asks the Court to dismiss every foreclosure-related count — Counts 2, 4, 5, 6, and 7 — on one syllogism: no payment was made, so nothing was uncredited, so the notices were accurate. Each step restates Defendants' denial of the pleading. The Amended Complaint alleges that two payments became final under § 70A-4-215 (¶¶ 39–40), that the notices overstated the default "by at least $35,411.14" (¶ 43; see ¶¶ 42, 61, 89), and that Mr. Brown signed each notice knowing the figures were wrong (¶ 61).

39.  The overstatement matters because non-judicial foreclosure "is not conducted under the supervision of a court of law; accordingly, strict compliance with the statute is required," and a sale prosecuted on a default overstated by two finalized payments does not comply. Am. Compl. ¶ 42 (citing Utah Code §§ 57-1-19 through 57-1-34). Plaza 106 rests these counts not on a technical

defect in the notice's form — which § 57-1-25(4) addresses — but on prosecution of a sale on figures Defendants knew false, which § 57-1-25(5) independently forbids. Whether the payments were final — and thus whether the notices overstated the default — is the disputed merits question, not resolvable against the pleader on a motion to dismiss.

40. Defendants' assertion that Plaza 106 "admits" the foreclosure "was without defect" (Mot. at 13) cites nothing in the Amended Complaint, which alleges the opposite: the March 17, 2026 Notice of Sale "flows from the defective Notice of Default" and overstates the amount owed. Am. Compl. ¶ 43; see id. ¶¶ 61, 90; Prayer ¶ C.

41. Because the "no defect" conclusion depends entirely on resolving the finality and crediting disputes in Defendants' favor, Section II supplies no basis to dismiss Counts 2, 4, 5, 6, or 7.

## VI. COUNT 4 STATES A CLAIM FOR BREACH OF THE DEPOSIT AGREEMENT; ALTERNATIVELY, LEAVE TO AMEND SHOULD BE GRANTED

42. A breach-of-contract claim requires a contract, performance or excuse, breach, and damages. *Daz Mgmt., LLC v. Honnen Equip. Co.*, 2022 UT 15, ¶ 29 n.26, 508 P.3d 84 (cited at Mot. at 11). The Amended Complaint pleads each: a written deposit agreement governing the checking account (Am. Compl. ¶ 55), whose existence the Answer admits (Answer ¶ 55: "Admit"); specific breaching conduct — "reversing Transaction 1 without authorization, deleting Transaction 2 without any accounting entry, and blocking the Debtor's access to the online banking portal during the period of alteration" (id. ¶ 56); and resulting damages (id. ¶ 57).

43. That is fair notice under Rule 8: the pleading identifies the contract, the account, three dated acts of breach, and the harm. Notice pleading does not require quoting section numbers of a form agreement the Bank drafted, holds, and has not produced — least of all where the conduct alleged breaches obligations at the core of any depositary relationship, including the good-faith

and ordinary-care duties Utah law writes into the agreement itself, Utah Code § 70A-4-103(1), and the implied covenant of good faith and fair dealing.

44.  If the Court nonetheless concludes that Count 4 must identify particular provisions, the remedy is leave to amend, not dismissal — and certainly not dismissal with prejudice. Plaza 106 stands ready to amend to identify the operative provisions promptly upon Defendants' production of the executed deposit agreement, which is uniquely in Defendants' possession. See *Foman v. Davis*, 371 U.S. 178, 182 (1962); Fed. R. Civ. P. 15(a)(2).

45.  Count 4 should stand; at most, any deficiency is curable and amendment should be freely given.

### VII. COUNT 5 IS NOT INDEPENDENTLY CHALLENGED, AND THE TRUSTEE-DUTY ALLEGATIONS ARE FACT-BOUND

46.  The Motion contains no section addressed to Count 5's elements; Mr. Brown's trustee duty is attacked only through Section II's "no defect" syllogism, which fails for the reasons in Part V. That alone requires denial.

47.  In any event, the allegations are concrete. A trustee exercising a power of sale "has a duty to the trustor not to defraud, or conspire or scheme to defraud, the trustor," Utah Code § 57-1-25(5), breach of which is independently actionable, id. § 57-1-25(7). Mr. Brown attended the February 20 meeting, told the Debtor on February 28 the Bank was "working on" Transaction 2, dismissed the erased transaction as "maybe ten dollars worth of interest," signed successive notices knowing the defaults omitted $35,411.14 in finalized payments, and sat silent while the Bank's witness denied a transaction he had personally discussed. Am. Compl. ¶¶ 21–26, 60–63, 85.

48.  Whether that conduct is consistent with a foreclosure trustee's duty of good faith is a question of fact the Motion does not engage. Count 5 stands.

## VIII. COUNT 6 PLEADS IMPROPER MEANS WELL BEYOND THE ACT OF POSTING

49. Defendants read Count 6 as resting solely on the act of posting a notice of sale — which § 57-1-25 requires — and conclude no "improper means" is alleged. Mot. at 16–17. That truncates the pleading, which alleges the posting "was based on a foreclosure process built on a defective NOD flowing from UCC violations established in Counts 1 and 2." Am. Compl. ¶ 67.

50. Under the very authority Defendants cite, "improper means" includes "conduct contrary to law — such as violations of statutes." *Mackey v. Krause*, 2025 UT 37, ¶ 105 (quoted at Mot. at 16); *Eldridge v. Johndrow*, 2015 UT 21, ¶ 70, 345 P.3d 553. The Amended Complaint pleads exactly that: § 70A-4-302 and § 70A-4-103 violations (Counts 1–2), record destruction contrary to § 70A-4-406 (Am. Compl. ¶ 50), and conduct operating to defraud a trustor under § 57-1-25(5) (Count 7). Interference through statutory violations is improper means under *Mackey*'s own definition.

51. The statutory-posting defense assumes its conclusion. Section 57-1-25 requires posting notice of a lawful sale; it does not privilege posting a notice alleged to be materially false — one overstating the default because two finalized payments went uncredited. Am. Compl. ¶¶ 42–43, 67. A privilege that presupposes compliance cannot be adjudicated by presuming compliance.

52. Independent of the posting, the pleading alleges improper means in the account conduct itself — the reversal of a finalized payment, the traceless deletion of Transaction 2, and the portal lockout — destroying the performing-lease posture any refinancing required. Am. Compl. ¶¶ 22, 24–25, 29, 66–68.

53. If Count 6 must itemize the improper-means catalog within its own paragraphs rather than by incorporation, leave to amend (Part XII) is the remedy; dismissal is unwarranted.

14

## IX. COUNT 7 STATES A CLAIM UNDER UTAH CODE § 57-1-25(5)

54.   Count 7 is likewise never independently briefed; it is swept into Section II's derivative argument only. Under § 57-1-25(5), a trustee exercising a power of sale "has a duty to the trustor not to defraud, or conspire or scheme to defraud, the trustor," Utah Code § 57-1-25(5), and one who violates that duty "is liable to the trustor" for actual damages or a statutory minimum, id. § 57-1-25(7). Am. Compl. ¶ 70.

55.   The concert-of-action facts are pleaded with dates, actors, and amounts: the Bank's alteration of Transaction 1 and deletion of Transaction 2 to inflate the stated default (Am. Compl. ¶ 72); Mr. Brown's knowledge of both transactions and execution of successive notices on figures he knew were wrong (id. ¶ 71); and joint action culminating in a sale premised on an overstated default (id. ¶¶ 72–73, 90).

56.   The Motion raises no Rule 9(b) challenge to Count 7. Should particularization nonetheless be required, the who, what, when, and where are already of record, and leave to amend (Part XII) is the remedy — not dismissal, the only relief the Motion seeks.

## X. COUNT 3: PLAZA 106 DOES NOT DEFEND A FREESTANDING SPOLIATION TORT; THE REMEDY IT SEEKS SURVIVES ON ANY LABEL

57.   Plaza 106 acknowledges that Utah has declined to recognize an independent tort of spoliation. Plaza 106 does not ask this Court to be the first.

58.   But the relief Count 3 actually seeks is not tort damages; it is an adverse inference — "that the destroyed record would have been unfavorable to FUB." Am. Compl. ¶ 53; Prayer ¶ D. That remedy exists independent of any tort label, through Rule 37 and the Court's inherent authority to sanction evidence destruction, and feeds into Counts 1, 2, and 8, where the deleted Transaction 2 records are the pivotal proof. The predicate is squarely pleaded: a seven-year

retention duty (¶ 50, citing Utah Code § 70A-4-406); intentional deletion during the February 28–March 3, 2025 lockout (¶¶ 51–52); and no reversal entry, memo, or trace (¶¶ 25, 51).

59.  Accordingly, any dismissal of Count 3 should (a) be limited to the freestanding tort; (b) be without prejudice to Plaza 106's right to seek spoliation sanctions and the adverse-inference relief in Prayer ¶ D as ancillary to Counts 1, 2, and 8; or (c) alternatively, permit Plaza 106 to restyle Count 3 as a Rule 37 sanctions request. Dismissal with prejudice — which could be misread to extinguish the remedy with the label — would be error.

### XI. COUNT 8: THE MOTION BRIEFS RULE 60(d)(1); COUNT 8 IS PLEADED — AND ADEQUATELY PLEADED — UNDER RULE 60(d)(3)

**A. Rule 60(d)(1) and Rule 60(d)(3) Are Distinct Doctrines with Distinct Elements.**

60.  Count 8 is pleaded under Rule 60(d)(3), and only Rule 60(d)(3) — the court's power to "set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3); *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944); *United States v. Buck*, 281 F.3d 1336, 1341–42 (10th Cir. 2002); *Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1290–91 (10th Cir. 2005); Am. Compl. Count 8 heading, ¶¶ 74–91, Prayer ¶ A. The Motion instead argues the Rule 60(d)(1) independent action and its "no adequate remedy" element (Mot. at 18–19) — a different subsection Plaza 106 has not invoked, whose elements and authorities supply no ground to dismiss the claim actually pleaded. Defendants may not recast Count 8 to fit the rule they would rather answer.

61.  Fraud on the court "is directed to the judicial machinery itself and is not fraud between the parties," *Buck*, 281 F.3d at 1342, and is "exempt" from the procedural limits governing ordinary Rule 60(b) motions, *Zurich*, 426 F.3d at 1290–91. It has no one-year bar, no diligence element, no "adequate remedy" element, and — as *Hazel-Atlas* holds — pierces the finality of the judgment attacked, because such fraud is "a wrong against the institutions set up to protect and safeguard the public." 322 U.S. at 246. For the same reason it requires no showing of consequential

16

damages or but-for effect; its gravamen is the corruption of the tribunal's truth-finding process, not the movant's financial loss. 322 U.S. at 247. The proximate-cause chain Defendants may demand belongs to the damages counts (1, 2, and 6), not to this claim, whose gravamen is that officers of the court made false representations on which this Court relied in entering the Stay Order.

62. The Motion's res judicata and "no adequate remedy" arguments miss for the same reason: the "no adequate remedy" requirement is a Rule 60(d)(1) element the fraud-on-the-court doctrine does not contain, *Zurich*, 426 F.3d at 1290–91, and preclusion presupposes a judgment whose integrity is intact — the very premise a Rule 60(d)(3) claim exists to test. Holding that the Stay Order's preclusive force bars a claim that it was procured by fraud would read Rule 60(d)(3) out of the rulebook. *Hazel-Atlas* rejected that circularity.

63. The particular "remedies" the Motion invokes fare no better on their own terms, for three reasons.

64. First, a summary stay-relief proceeding does not preclude plenary claims: § 362(d) litigation is expedited and does not adjudicate the merits of the underlying claims. The Motion cites no authority giving a stay order claim-preclusive effect over an eight-count complaint — much less over a claim that the order was fraudulently procured.

**B. None of the Motion's Asserted "Remedies" — Preclusion, Rule 59(e), or Appeal — Reaches a Corrupted Record.**

65. Second, the denied Rule 59(e) motion is no bar. That motion tested a ruling on the record the parties made; a Rule 60(d)(3) claim alleges the record itself was corrupted — by the Stay Motion's representations, the hearing testimony, and the deletion of the records — the very material on which that proceeding was conducted. A ruling entered within the shadow of the alleged fraud cannot immunize it.

66.  Third, appeal is no answer. Appellate review takes the record as given and is powerless against a record alleged to have been falsified at its source — which is why *Hazel-Atlas* granted relief from a judgment affirmed on appeal years earlier. The Amended Complaint alleges such concealment: portal access blocked February 28 to March 3, 2025 while Transaction 2 was erased, so that "[b]y the time the Debtor regained access . . . the records had been erased." Am. Compl. ¶¶ 24–25, 87.

67.  None of these "remedies" reaches a claim that the record itself was corrupted — the office of Rule 60(d)(3).

**C. Rule 60 Applies Through Bankruptcy Rule 9024 — As Defendants Concede.**

68.  To the extent the Motion suggests Rule 60(d)(3) is procedurally unavailable, Defendants concede otherwise: Rule 60 applies through Bankruptcy Rule 9024. Mot. at 18 n.4. And because the Amended Complaint seeks, alongside vacatur, money damages and declaratory relief as to the foreclosure's validity and the interests in the Property, an adversary proceeding is the required vehicle. Fed. R. Bankr. P. 7001(1), (2), (9). Which court adjudicates the claim is the subject of Plaza 106's pending withdrawal motion and the Part I abeyance request; nothing here concedes that question.

69.  Count 8 invokes the settled power of a court to relieve a party from a judgment (here, the Stay Order, Dkt. No. 54) procured by fraud upon the court. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). That power exists whether the claim is ultimately decided here or, on withdrawal, by the District Court.

**D. The Amended Complaint Pleads to the Doctrine's Demanding Standard — the Attorney-Implication Paradigm the Tenth Circuit Identifies.**

70. Plaza 106 does not minimize the standard: fraud on the court must be shown by clear and convincing evidence, *Weese*, 98 F.3d at 552; intent to defraud is an "absolute prerequisite," *Robinson*, 56 F.3d at 1267; and ordinarily only "the fabrication of evidence by a party in which an attorney is implicated" qualifies — nondisclosure or perjury alone does not. *Weese*, 98 F.3d at 552–53; *Zurich*, 426 F.3d at 1291; *Buck*, 281 F.3d at 1342. The Amended Complaint embraces that standard, pleading that mere "nondisclosure by a party or witness . . . alone would not constitute fraud on the court" and resting on the participation of officers of the court. Am. Compl. ¶ 86.

71. Measured against that standard, the Amended Complaint pleads the paradigm the Tenth Circuit reserves the doctrine for — misconduct "in which an attorney is implicated" — through five interlocking factual clusters, each pleaded with dates, actors, and record citations:

> (a) *Officer-of-the-court representations.* Counsel for the Bank signed and filed the Stay Motion representing to this Court that "the Debtor began discussions with the Movant and the Movant recorded a Cancellation of Notice of Default and cancelled the Trustee's Sale," and that "[d]iscussions between the Debtor and Movant broke down and the Debtor remained in default." Bankr. Dkt. No. 9 ¶¶ 17–18; Am. Compl. ¶¶ 30, 78, 80.

> (b) *Contradiction by the Bank's own sworn witness.* At the February 5, 2026 evidentiary hearing, the Bank's Vice President testified that the cancellation was caused by "a payment that was taken . . . done in mistake by the bank and reversed and put back and . . . that's what caused the foreclosure to be restarted." Am. Compl. ¶¶ 31, 81 (quoting Tr. at 85). The Court was told discussions; the Bank's witness swore it was a payment. Id. ¶ 82.

> (c) *Sworn denials in counsel's presence.* The same witness denied knowledge of Transaction 2 four times under oath — while Mr. Brown, an attorney and officer of this Court who had personally participated in the three-hour February 20, 2025 discussion of both transactions, sat silent. Am. Compl. ¶¶ 32, 62, 83, 85.

> (d) *Concealment directed at the record itself.* Portal access was blocked from February 28 to March 3, 2025; during that window Transaction 2 was erased

19

without any reversal entry, refund memo, or trace; and the Debtor was told the Bank was "working on it." Am. Compl. ¶¶ 24–25, 83, 87. That is conduct aimed at the evidence a tribunal would need — the "judicial machinery," *Buck*, 281 F.3d at 1342 — not mere sharp practice between parties.

(e) *Reliance.* The Court "relied on the representations in Doc 9 and on the testimony at the evidentiary hearing in granting the" Stay Order. Am. Compl. ¶ 88; see id. ¶ 91.

72.   Paragraph 90 pleads the integration: a step-by-step "coordinated sequence of acts by an officer of this Court in concert with FUB" — alteration, posting, second debit, lockout, deletion, dismissal of concerns, the "discussions" filing, silence during sworn denials, stay relief, and a sale executed on figures known to be wrong. Am. Compl. ¶ 90. That is an allegation of "an intent to deceive or defraud the court, by means of a deliberately planned and carefully executed scheme," *Yapp*, 186 F.3d at 1231 — the precise formulation this Circuit uses.

73.   Whether Plaza 106 can *prove* these allegations by clear and convincing evidence is for summary judgment or trial, after discovery into the records Defendants allegedly deleted. On this Motion the only question is whether the allegations, accepted as true, state a plausible claim of fraud directed at the judicial machinery in which officers of the court are implicated. They do. If the facts pleaded in Paragraphs 78 through 91 were proven and did not constitute fraud on the court, it is difficult to conceive what conduct short of bribery would.

74.   Plaza 106 does not brief the Rule 60(d)(1) independent-action elements the Motion recites, because Count 8 does not invoke that subsection. Count 8 is a Rule 60(d)(3) claim for fraud on the court. The Motion's failure to address that doctrine — its actual elements, and whether the Amended Complaint pleads them — is not a gap Plaza 106 must fill; it is the reason the Motion fails to state a basis for dismissal. Count 8 should not be dismissed, least of all with prejudice.

## XII. IN THE ALTERNATIVE, LEAVE TO AMEND SHOULD BE FREELY GIVEN

75. If the Court concludes that any count is deficient, Plaza 106 requests leave to amend under Rule 15(a)(2), which directs that leave be "freely give[n] . . . when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962). This is Defendants' first Rule 12 motion; no scheduling order exists; discovery has not begun; there is no undue delay, bad faith, or prejudice; and dismissal with prejudice is reserved for cases in which amendment would be futile.

76. Amendment would not be futile: the concrete cures for Counts 3, 4, 6, and 7 are set out in Parts VI, VIII, IX, and X above — identifying the deposit-agreement provisions on production, enumerating the improper-means catalog, conforming the § 57-1-25 particulars already of record, and restyling Count 3 as a Rule 37 sanctions request.

77. Plaza 106 requests twenty-one (21) days from any order identifying a deficiency within which to file a second amended complaint.

### CONCLUSION

For the foregoing reasons, Plaza 106 respectfully requests that the Court: (1) hold the Motion to Dismiss in abeyance — or, in the alternative, stay its determination under Federal Rule of Bankruptcy Procedure 5011(c) — pending the District Court's decision on the Motion to Withdraw the Reference in Case No. 2:26-cv-00521-TC; (2) in the alternative, deny the Motion in its entirety; (3) as to Count 3, limit any dismissal to the count as a freestanding tort, without prejudice to Plaza 106's right to seek spoliation sanctions and adverse-inference relief, or grant leave to restyle; (4) as to any other count found deficient, dismiss without prejudice and grant Plaza 106 twenty-one days' leave to amend; and (5) grant such other and further relief as is just and proper. This Opposition is submitted without waiver of, and expressly subject to, Plaza 106's Notice of Non-Consent (Dkt. No. 20) and its demand for trial by jury (Dkt. No. 18).

DATED: July 3, 2026.

VALERGA LLP

/s/ Brody Valerga
Brody Valerga (USB #11789)
Attorney for Plaintiff and Debtor in Possession

## CERTIFICATE OF COMPLIANCE

I certify, pursuant to DUCivR 7-1(a)(4), that this Opposition contains 6,396 words —
excluding the caption, table of contents, table of authorities, signature block, certificate of service,
and any exhibits — and therefore complies with the 6,500-word limit applicable to a memorandum
in opposition to a motion under Federal Rule of Civil Procedure 12(b) (made applicable by Federal
Rule of Bankruptcy Procedure 7012).

/s/ Brody Valerga
Brody Valerga

**CERTIFICATE OF SERVICE**

I hereby certify that on July 3, 2026, I caused the foregoing PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (DKT. NO. 27) AND REQUEST THAT THE MOTION BE HELD IN ABEYANCE PENDING THE DISTRICT COURT'S DECISION ON THE MOTION TO WITHDRAW THE REFERENCE to be filed with the Clerk of the United States Bankruptcy Court for the District of Utah using the CM/ECF system, which caused a Notice of Electronic Filing to be served upon all counsel of record, including counsel for Defendants First Utah Bank and Michael R. Brown.

/s/ Brody Valerga
Brody Valerga