Brody Valerga (USB #11789)
**VALERGA LLP**
395 South Main Street, Suite 201
Alpine, UT 84004
Telephone: (801) 893-3635
Email: brody@valergalawyers.com
*Attorney for Plaintiff and Counterclaim Defendant Plaza 106, LLC*

| | |
|---|---|
| In re:<br>**PLAZA 106, LLC,**<br>     Debtor in Possession. | **Bankruptcy No. 25-bk-25459-PH**<br>Chapter 11 |
| **PLAZA 106, LLC,**<br>     Plaintiff and Counterclaim Defendant,<br>     v.<br>**FIRST UTAH BANK, a Utah state-chartered bank; and MICHAEL R. BROWN, in his capacity as Successor Foreclosure Trustee,**<br>     Defendants and Counterclaim Plaintiff,<br>**FIRST UTAH BANK, a Utah State Chartered Bank,**<br>     Third-Party Plaintiff,<br>     v.<br>**NAGENDRA PRASAD REDDY,**<br>     Third-Party Defendant. | Hon. Peggy Hunt<br><br>**Adversary Proceeding No. 26-02063** |

**PLAZA 106, LLC'S MOTION TO DISMISS COUNTS ONE AND THREE OF FIRST
UTAH BANK'S COUNTERCLAIM, AND MEMORANDUM IN SUPPORT**

## TABLE OF CONTENTS

INTRODUCTION AND RELIEF SOUGHT ...................................................................................4

STATEMENT OF ISSUES ..........................................................................................................5

BACKGROUND: THE ALLEGATIONS OF THE COUNTERCLAIM ....................................6

LEGAL STANDARD....................................................................................................................7

ARGUMENT .................................................................................................................................8

I.  COUNT THREE (MORTGAGE FRAUD) FAILS TO STATE A CLAIM. ...........................8

    A.  Count Three does not satisfy Rule 9(b)'s particularity requirement.............................8

    B.  Count Three pleads fraud by omission but no duty to disclose. ..................................9

    C.  Count Three pleads no cognizable, proximately caused damages. .............................10

II.  COUNT ONE (DEFICIENCY JUDGMENT) FAILS TO STATE A CLAIM. ......................11

    A.  Fair market value is an essential element that the Counterclaim never pleads............11

    B.  On the only value the Bank pleads, no deficiency exists. ...........................................12

    C.  The "artificially inflated value" theory depends on Count Three and collapses with it. ...................................................................................................................................13

CONCLUSION.............................................................................................................................13

CERTIFICATE OF COMPLIANCE............................................................................................14

## TABLE OF AUTHORITIES

### *Cases*

*Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, 66 P.3d 588 ....................................................10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .............................................................................................7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................................7

*Koch v. Koch Industries, Inc.*, 203 F.3d 1202 (10th Cir. 2000) .........................................................8

*Machock v. Fink*, 2006 UT 30, 137 P.3d 779 ..................................................................................11

*United States ex rel. Sikkenga v. Regence BlueCross BlueShield of Utah*, 472 F.3d 702 (10th Cir. 2006) ..............................................................................................................................................7

*Yazd v. Woodside Homes Corp.*, 2006 UT 47, 143 P.3d 283 ............................................................9

### *Statutes*

Utah Code § 57-1-32 ................................................................................................................ passim

### *Rules*

Fed. R. Bankr. P. 7009 ........................................................................................................................4

Fed. R. Bankr. P. 7012 ........................................................................................................................4

Fed. R. Civ. P. 9(b) .............................................................................................................................4

Fed. R. Civ. P. 12(a)(4) .......................................................................................................................4

Fed. R. Civ. P. 12(b)(6) .......................................................................................................................4

Fed. R. Civ. P. 12(d) ...........................................................................................................................8

DUCivR 7-1(a)(4) ..............................................................................................................................14

**INTRODUCTION AND RELIEF SOUGHT**

Plaza 106, LLC ("Plaza 106"), the plaintiff and counterclaim defendant, moves under Federal Rule of Civil Procedure 12(b)(6)—made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012—to dismiss Count One (Deficiency Judgment) and Count Three (Mortgage Fraud) of First Utah Bank's Counterclaim [Doc 13] for failure to state a claim upon which relief can be granted. Plaza 106 does not move against Count Two and will respond to it separately.[1]

Both challenged counts fail on the four corners of the Counterclaim, and they fail together. Count Three—the Bank's fraud claim—is the linchpin. It is the only theory by which Count One's deficiency claim survives the Bank's own arithmetic: the Bank pleads that its property was worth $3,530,000 (¶ 35), that the debt at the sale was $3,527,127.02 (¶¶ 38, 54), and that it must nonetheless recover a deficiency because the appraisal was "artificially inflated" by Plaza 106's alleged fraud (¶¶ 42, 55). Strip away the fraud theory and the Bank is left with a pleaded value that exceeds the pleaded debt—that is, no deficiency at all.

The fraud claim cannot bear that weight. It fails Rule 9(b)'s heightened particularity requirement, made applicable by Rule 7009: it never identifies who made a false statement, when, or where, and it recasts a bare omission as an affirmative misrepresentation. It rests entirely on the non-disclosure of a lease addendum, yet pleads no duty to disclose—no fiduciary relationship, no contractual obligation, and no allegation that the Bank ever asked for the document. And it pleads no cognizable, proximately caused damages: the sole injury alleged is that the Bank "overbid[]"

---

[1]Plaza 106 does not move against Count Two (Declaratory Judgment / Breach of Agreement – Turn Over of Rents). Under Rule 12(a)(4), made applicable by Rule 7012, service of this motion suspends the time to respond to the remaining count until 14 days after the Court acts on the motion. Should the Court prefer, Plaza 106 will file a partial answer to Count Two contemporaneously.

at its own foreclosure auction (¶ 74; Prayer ¶ 3)—a self-inflicted credit bid the Bank chose, on a lease option that by the Bank's own dates expired nearly three years before the sale.

Count One independently fails for a different reason. A deficiency after a nonjudicial trustee's sale is governed exclusively by Utah Code § 57-1-32, which makes the property's fair market value at the sale date an essential element and caps any deficiency at the debt minus the greater of the sale price or that fair market value. The Counterclaim pleads no fair market value at all—it expressly reserves "actual value … to be determined" (¶ 56)—and instead computes a deficiency the old-fashioned, pre-statute way, as debt minus the credit bid (¶ 55). That is a missing element, not a curable typo. And on the only value the Bank does plead, its own $3,530,000 appraisal exceeds the debt, so the statutory formula yields zero.

The two counts also contradict each other. Count One says the Bank's $3,100,000 credit bid was too high relative to the property's "actual value," leaving a larger deficiency (¶¶ 42, 55); Count Three seeks damages precisely because the Bank bid too much (¶ 74). The Bank cannot recover the same "overbid" dollars twice—once as an enlarged deficiency and again as fraud damages. Each count negates the other.

For these reasons, developed below, Plaza 106 respectfully requests that the Court dismiss Counts One and Three of the Counterclaim.

## STATEMENT OF ISSUES

1.      Whether Count Three (Mortgage Fraud) states a claim, where it pleads fraud by omission without identifying the speaker, time, or place, without pleading any duty to disclose, and without pleading any cognizable, proximately caused injury other than the Bank's own credit bid.

5

2.      Whether Count One (Deficiency Judgment) states a claim, where it neither pleads the fair market value that Utah Code § 57-1-32 makes an essential element of a post-sale deficiency, nor discloses any deficiency once the Bank's own pleaded appraisal is applied, and depends for its only remaining theory on the defective fraud count.

**BACKGROUND: THE ALLEGATIONS OF THE COUNTERCLAIM**

The following recites only what the Counterclaim pleads. On this motion the allegations are taken as true and are tested against their own four corners.

*The loan.* The Bank alleges that on or about July 6, 2022, Plaza 106 applied for a business loan (¶ 6), submitting three written five-year leases (¶¶ 7–10). It alleges that on or about June 30, 2022—before the application—Mr. Reddy signed an addendum to the larger Com Com Market lease (the "Addendum") (¶ 11), which gave that tenant an "option to terminate lease until June 30, 2023 for no charge" (¶ 13). It alleges Plaza 106 did not disclose the Addendum with the application (¶ 14). The Bank made the loan on July 20, 2022 (¶¶ 17–18), took a note, guaranty, deed of trust, and assignment of rents (¶¶ 19–22), and Plaza 106 defaulted in June 2024 (¶ 23).

*The sale.* Plaza 106 petitioned for chapter 11 relief on September 15, 2025 (¶ 24). The Bank commissioned an appraisal that "valued the Real Property at $3,530,000.00" (¶ 35); obtained stay relief on March 2, 2026 (¶ 36); and on April 21, 2026 the property sold at a trustee's sale (¶ 37). As of that date, the Bank alleges, Plaza 106 and Mr. Reddy owed $3,527,127.02 (¶¶ 38, 54), and the Bank credit bid $3,100,000, which the trustee accepted (¶¶ 39–40, 53).

*Count One (Deficiency).* The Bank alleges that "[b]ased on the credit bid and the amount due, there remained a deficiency claim of $427,127.02 as of the date of the sale" (¶¶ 41, 55)—that is, $3,527,127.02 minus $3,100,000. It then alleges that its "credit bid does not reflect the actual value … because the valuation was artificially inflated based on Plaza 106's false statements …

and failure to disclose the Addendum" (¶¶ 42, 55), and that "[a] deficiency remains after applying the actual value of the Real Property … in an amount to be determined" (¶ 56). The Counterclaim nowhere invokes Utah Code § 57-1-32 and nowhere pleads a fair market value.

*Count Three (Mortgage Fraud).* The Bank alleges that "[d]uring the loan application process, Plaza 106 and Reddy made a false statement about the terms of the leases and the lease income … by failing to disclose the Addendum" (¶ 69); that they "made the statements knowing they were false" (¶ 70) and "intended that the Bank would rely" (¶ 71); that the Bank relied "when entering into the Loan Agreement" (¶ 72) and "when seeking an appraisal" (¶ 73); and that the Bank "suffered damages … by, among other things, overbidding on the Real Property at the public auction" (¶ 74). The Prayer seeks fraud damages measured by "the amount that the Bank was damaged in overbidding" (Prayer ¶ 3).

### LEGAL STANDARD

Rule 12(b)(6), applied through Rule 7012, requires dismissal where the pleading fails to state a claim upon which relief can be granted. To survive, a pleading must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible only when the pleaded facts allow the court to draw a reasonable inference that the defendant is liable; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and legal conclusions "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The court accepts well-pleaded facts as true but disregards labels, conclusions, and formulaic recitations of elements. *Id.*

A fraud claim carries an additional burden. Rule 9(b), applied through Rule 7009, requires that "the circumstances constituting fraud … be stated with particularity." The Tenth Circuit reads

this to require the pleader to "set forth the who, what, when, where and how of the alleged fraud." United States ex rel. *Sikkenga v. Regence BlueCross BlueShield of Utah*, 472 F.3d 702, 726–27 (10th Cir. 2006) (internal quotation marks omitted); accord *Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000).

The motion is decided on the four corners of the Counterclaim, together with documents it incorporates and matters subject to judicial notice. Matters outside the pleading would convert the motion to one for summary judgment under Rule 12(d); accordingly, Plaza 106 attaches no evidence and asks the Court to test the Counterclaim as pleaded.

## ARGUMENT

### I.      COUNT THREE (MORTGAGE FRAUD) FAILS TO STATE A CLAIM.

Count Three should be dismissed for three independent reasons: it is not pleaded with the particularity Rule 9(b) demands; it alleges fraud by omission but pleads no duty to disclose; and it pleads no cognizable, proximately caused damages. Because Count Three is the sole support for Count One's "actual value" theory, its dismissal also resolves the deficiency count, as shown in Part II.

### A.  Count Three does not satisfy Rule 9(b)'s particularity requirement.

Rule 9(b) requires a fraud pleader to state the circumstances of the fraud with particularity—the who, what, when, where, and how. *Sikkenga*, 472 F.3d at 726–27. The rule's purpose is to give the defending party fair notice of the specific conduct charged so it can prepare a response, and to protect against fraud claims pleaded on speculation. A claim that merely gestures at fraud "during the loan application process" does not meet the standard.

Count Three fails on every element the rule requires. *Who.* Paragraph 69 attributes the alleged "false statement" jointly to "Plaza 106 and Reddy," without saying which of them said or omitted anything, or through whom the entity acted. Where fraud is charged against multiple

8

parties, the pleading must attribute the specific misconduct to each; lumping an entity and an individual together does not tell either what he is alleged to have done. *When and where.* Paragraph 69 fixes the fraud only "[d]uring the loan application process"—no date, no meeting, no communication, no document. The Bank pleads elsewhere that the application was submitted "on or about July 6, 2022" (¶ 6), but it does not tie any statement or omission to that or any other identified occasion. *What and how.* Paragraph 69 alleges a "false statement … by failing to disclose the Addendum"—on its face a contradiction. A "false statement" is an affirmative representation; "failing to disclose" is an omission. The Bank does not identify any affirmative statement that was untrue when made; it identifies only what was not said. The count thus pleads neither a misrepresentation with particularity nor an omission with the duty that would make silence actionable.

Even under the more forgiving standard some courts apply to omission-based fraud—where a plaintiff cannot always specify the "where" of a thing left unsaid—the Bank must still plead what should have been disclosed, by whom, and the basis of the obligation to disclose it. The Counterclaim supplies none of these. It should be dismissed under Rule 9(b).

**B. Count Three pleads fraud by omission but no duty to disclose.**

An omission is actionable as fraud only where the silent party had a duty to speak. Under Utah law, a duty to disclose arises from a fiduciary or confidential relationship, or where one party has information the other cannot reasonably discover and knows the other is acting under a mistaken understanding. *See Yazd v. Woodside Homes Corp.*, 2006 UT 47, 143 P.3d 283. Absent such a relationship or informational imbalance, parties to an arm's-length commercial transaction owe no general duty to volunteer information, and mere nondisclosure is not fraud.

The Counterclaim pleads no such duty. It alleges an ordinary lender-borrower loan transaction (¶¶ 6, 17–18)—a paradigmatic arm's-length dealing that creates no fiduciary or confidential relationship running from borrower to bank. It does not allege that the Bank asked Plaza 106 for lease addenda, that the application required their disclosure, or that any representation Plaza 106 did make was rendered misleading by the omission. It pleads only that Plaza 106 "did not disclose the Addendum with the loan application" (¶ 14) and later repeats that characterization (¶ 69). Silence without a duty to speak is not actionable, and the Counterclaim pleads no facts from which a duty could plausibly be inferred. Count Three fails for this reason as well.

### C. Count Three pleads no cognizable, proximately caused damages.

Fraud requires damages proximately caused by justifiable reliance on the misrepresentation. *See Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 16, 66 P.3d 588 (reciting the elements of fraud, including reliance and resulting damage). The Counterclaim pleads neither cognizable damage nor causation.

*The only injury pleaded is the Bank's own credit bid.* Paragraph 74 alleges the Bank was damaged "by, among other things, overbidding on the Real Property at the public auction," and the Prayer measures the claim by "the amount that the Bank was damaged in overbidding" (Prayer ¶ 3). But the "overbid" was the Bank's own $3,100,000 credit bid (¶¶ 39, 53)—a number the Bank alone selected, at a sale it conducted, using a credit against the very debt it now sues to collect. A credit bid is not an out-of-pocket expenditure; it is a bookkeeping entry that reduces the debt dollar-for-dollar. A party cannot manufacture fraud damages by choosing to bid more of its own credit than it now says the property was worth.

*The Counterclaim pleads no but-for causation to any lending loss.* Nowhere does the Bank allege that, had it known of the Addendum, it would not have made the 2022 loan, or would have lent less, or would have lent on different terms. It alleges only that it relied on the lease terms "when entering into the Loan Agreement" (¶ 72) and "when seeking an appraisal" (¶ 73)—reliance on its own underwriting and its own commissioned appraisal (¶ 35), not on any borrower statement. Reliance on one's own appraisal is not justifiable reliance on another's silence, and it breaks rather than establishes the causal chain to the 2026 credit bid.

*The causal chain is independently broken by the Bank's own dates.* The Addendum's only pleaded term of consequence is a tenant option to terminate "until June 30, 2023" (¶ 13). That option, by the Bank's own pleading, expired on June 30, 2023—nearly three years before the April 21, 2026 sale and credit bid. A terminable-lease risk that lapsed in 2023 cannot plausibly have caused the Bank to "overbid" in 2026. The Counterclaim pleads no bridge across that gap, and none is available on its face.

Because Count Three pleads no cognizable injury, no but-for causation, and a causal chain its own dates sever, it fails to state a claim for this reason as well.

## II.    COUNT ONE (DEFICIENCY JUDGMENT) FAILS TO STATE A CLAIM.

A deficiency after a nonjudicial trustee's sale is a creature of statute in Utah, and the statute—Utah Code § 57-1-32—supplies elements the Counterclaim does not plead. Count One fails for three reasons, any one of which is sufficient: it pleads no fair market value, which § 57-1-32 makes an essential element; on the only value it does plead, no deficiency exists; and its sole escape from that arithmetic, the "artificially inflated value" theory, depends on the defective fraud count and collapses with it.

**A. Fair market value is an essential element that the Counterclaim never pleads.**

Section 57-1-32 is the exclusive procedure for recovering a deficiency after a trustee's sale, and it displaces the common-law measure of debt minus sale price. *See* Utah Code § 57-1-32; *Machock v. Fink*, 2006 UT 30, 137 P.3d 779. Under the statute, a deficiency is limited to "the amount by which the amount of the indebtedness … exceeds the greater of" the property's fair market value at the time of sale or the sale price. Fair market value at the sale date is therefore not optional detail—it is a necessary input to the only deficiency the statute allows. A deficiency claim that omits it omits an element.

The Counterclaim omits it. Count One pleads the indebtedness ($3,527,127.02, ¶ 54) and the credit bid ($3,100,000, ¶ 53), and then computes the "deficiency" as the difference between the two ($427,127.02, ¶ 55). That is the pre-statute, debt-minus-price measure—not the statutory measure. The count pleads no fair market value at all; it expressly defers "actual value … to be determined" and seeks a deficiency "in an amount to be determined based on the actual value … and the income realizable thereon" (¶¶ 55–56). A plaintiff need not cite a statute by name, but it must plead facts satisfying the statute's elements; a placeholder promise to supply the central valuation "later" is the opposite of a well-pleaded element. Because the Court cannot determine from the pleading whether any deficiency exists under the statutory formula—the formula requires comparing the debt to the greater of price or fair market value, and no fair market value is pleaded—Count One does not state a claim.

**B. On the only value the Bank pleads, no deficiency exists.**

Even if the Court looked past the missing element, the Counterclaim negates its own deficiency on the single value it does plead. The only valuation in the pleading is the Bank's appraisal, which "valued the Real Property at $3,530,000.00" (¶ 35). The pleaded debt at the sale

12

was $3,527,127.02 (¶¶ 38, 54). Under § 57-1-32, the deficiency is the debt minus the greater of

the sale price or the fair market value. If the fair market value is the Bank's own $3,530,000

figure—the only value in the pleading—then the greater of price ($3,100,000) or value

($3,530,000) is $3,530,000, which exceeds the debt. The statutory deficiency is therefore zero.

The Bank cannot plead a deficiency and, in the same pleading, plead a value that extinguishes it.

### C. The "artificially inflated value" theory depends on Count Three and collapses with it.

The Bank's only answer to its own arithmetic is that the $3,530,000 appraisal "does not

reflect the actual value" because it was "artificially inflated based on Plaza 106's false statements

… and failure to disclose the Addendum" (¶¶ 42, 55). That theory is expressly derivative of Count

Three: the "inflation" is the alleged fraud, and the "actual value" is whatever number remains after

the fraud is subtracted. For the reasons stated in Part I, Count Three fails to state a claim. When

the fraud predicate falls, so does the "inflated value" workaround, and the Bank is left with its own

appraisal and no deficiency.

The theory is also independently defective as circular pleading. It measures the Bank's self-

selected credit bid against the Bank's own commissioned appraisal, and then asks the Court to

disregard the only pleaded value in favor of a lower, unpleaded, "to be determined" figure. That is

precisely the open-ended valuation § 57-1-32 forecloses: fair market value must be pleaded and

proven, not reserved for later supply after the deficiency has been demanded.

Finally, the theory contradicts Count Three on damages. Count One says the credit bid was

too high relative to "actual value," which would enlarge the deficiency (¶¶ 42, 55); Count Three

seeks damages because the bid was too high (¶ 74; Prayer ¶ 3). The same "overbid" dollars cannot

be recovered twice—once as a larger deficiency and again as fraud damages. The internal

contradiction confirms that neither count, as pleaded, states a coherent claim.

## CONCLUSION

For the foregoing reasons, Plaza 106 respectfully requests that the Court dismiss Count

One and Count Three of First Utah Bank's Counterclaim, and grant such further relief as is just.

DATED this 6th day of July, 2026.

**VALERGA LLP**

/s/ Brody Valerga
Brody Valerga
Attorney for Plaintiff and Counterclaim
Defendant Plaza 106, LLC

## CERTIFICATE OF COMPLIANCE WITH WORD LIMIT

Pursuant to DUCivR 7-1(a)(4) (incorporated by LBR 1001-1(a)), I certify that this Motion contains 3285 words, excluding the caption, table of contents, table of authorities, signature block, certificate of compliance, and certificate of service, as counted by the word-processing system used to prepare it, and therefore complies with the applicable word limit.

DATED this 6th day of July, 2026.

**VALERGA LLP**

/s/ Brody Valerga
Brody Valerga
Attorney for Plaintiff and Counterclaim
Defendant Plaza 106, LLC

**CERTIFICATE OF SERVICE**

I certify that on the date set forth below, I caused a true and correct copy of the foregoing to be

served on the following parties of record through the Court's CM/ECF electronic filing system:

    Zack L. Winzeler – zwinzeler@parsonsbehle.com
    Brian M. Rothschild – brothschild@parsonsbehle.com
    Whitney E. McKiddy – wmckiddy@parsonsbehle.com
    ecf@parsonsbehle.com; docket@parsonsbehle.com
    United States Trustee – USTPRegion19.SK.ECF@usdoj.gov

DATED this 6th day of July, 2026.

                  /s/ Brody Valerga