Zack L. Winzeler, USB #12280
Brian M. Rothschild, USB #15316
Whitney E. McKiddy, USB #17585
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, UT 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
ZWinzeler@parsonsbehle.com
BRothschild@parsonsbehle.com
WMcKiddy@parsonsbehle.com
ecf@parsonsbehle.com

*Attorneys for Defendants, Counterclaim Plaintiff,
and Third-Party Plaintiff*

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br>PLAZA 106 LLC,<br><br>    Debtor. | |
| PLAZA 106 LLC,<br>    Plaintiff and Counterclaim Defendant,<br><br>v.<br><br>FIRST UTAH BANK, a Utah State Chartered Bank; and MICHAEL R. BROWN, in his capacity as Successor Foreclosure Trustee,<br><br>    Defendants and Counterclaim Plaintiff | Adv. No. 26-ap-02063-PH<br><br>(Related to Case No. 25-bk-25459-PH)<br><br>Chapter 11 |
| FIRST UTAH BANK, a Utah State Chartered Bank,<br><br>    Third-Party Plaintiff,<br><br>v.<br><br>NAGENDRA PRASAD REDDY,<br><br>    Third-Party Defendant. | Judge Peggy Hunt |

## MEMORANDUM IN OPPOSITION TO PLAZA 106'S MOTION TO DISMISS IN PART UTAH BANK'S COUNTERCLAIM

4902-3778-4509

With the Counterclaim, Dkt. No. 13, Defendant and Counterclaim Plaintiff First Utah Bank (the "**Bank**") adequately alleges that Plaintiff and Counterclaim Defendant Plaza 106 LLC ("**Plaza**") intentionally misrepresented the value of leases securing its loan with the Bank. Plaza's Motion to Dismiss, Dkt. No. 32 (the "**Motion**"), seeking to dismiss two of the Bank's three counterclaims against it—the deficiency judgment and mortgage fraud claims—is meritless. The Court should deny Plaza's Motion because the Bank has adequately pleaded each claim against Plaza, and Plaza has failed to offer any supported argument to immunize it from liability for the misrepresentations about the lease terms that it submitted with its loan application.

First, the Bank has pleaded its fraud-based claims with particularity. To support its deficiency judgment claim and mortgage fraud claim against Plaza, the Bank has sufficiently pleaded the "who, what, when, where" of the misrepresentation such that Plaza has fair notice of the claims and the factual ground upon which they are based. That is, the Bank alleges that Plaza and its manager-member, Nagendra Prasad Reddy ("**Mr. Reddy**"), submitted a loan application to the Bank on or about July 6, 2022, that misrepresented certain the terms of leases related to the property to be used as collateral for the loan. Plaza relied on these misrepresentations, extended credit—in retrospect, an awful move—and lost hundreds of thousands of dollars. With these allegations, Plaza has fair notice of the fraud-based claims asserted against it. Accordingly, the Bank has sufficiently pleaded its fraud-based claims against Plaza with particularity as required by Federal Rule of Civil Procedure 9(b).

Second, the Bank's fraud-based claims asserted against Plaza are based on its affirmative representations of the lease terms in the loan application—not the omission of the addendum. Rather than being used to support a fraudulent omission claim, the Bank's allegations related to

1

4902-3778-4509

the undisclosed lease addendum demonstrate the falsity of Plaza's representations in the loan application, as well as Plaza's knowledge of the falsity of those representations at the time it submitted its loan application. Because the Bank has not pleaded a claim for fraudulent omission or concealment, Plaza's arguments related to an unpleaded legal duty to disclose are inapplicable to the Bank's claims asserted in this action.

Third, the Bank has adequately pleaded that it has been damaged by relying on Plaza's misrepresentations about the lease terms in at least two ways: by loaning Plaza $2,750,000 based in part on the purported terms of the leases Plaza submitted with its loan application, and by relying on the purported terms of the leases for an appraisal of the real property that was later used to support the Bank's credit bid for the property. Plaza's unsupported arguments relying on matters outside the pleading do not alter the sufficiency of the Bank's alleged damages.

Fourth, and finally, the Bank has sufficiently pleaded the fair market value of the Real Property for the purposes of Utah Code § 57-1-32. Because each argument Plaza asserts in the Motion fails, the Court should deny the same.

## STATEMENT OF FACTS

1. Plaza submitted an application to the Bank for a business loan on or about July 6, 2022. Dkt. 13, Counterclaim ¶ 6. As part of that application, that Plaza included three written leases, each with a five-year term and monthly rent requirements (the "**Leases**"). *Id.* ¶¶ 8, 10. Plaza represented that the Leases related to real property located at 894 East 3900 South, Salt Lake City, Utah 84107 (the "**Real Property**"). *See id.* ¶ 8.

2. The Bank relied on Plaza's representations related to the lease terms and income when entering into a Business Loan Agreement (the "**Loan Agreement**") with Plaza, loaning

Plaza $2,750,000. *Id.* ¶¶ 17–18. The Lease terms were material to its decision to extend credit to Plaza. *Id.* ¶ 16.

3.　　　Along with the Loan Agreement, Plaza also subsequently executed a Promissory Note and Deed of Trust for the Real Property providing the Bank with a security interest in the Real Property, the Leases, rents from the Real Property, and certain personal property. *Id.*

4.　　　Plaza's representations relating to the terms of at least one of the Leases—the Com Com Market Lease—were false, as demonstrated by an undisclosed lease addendum signed before Plaza submitted its loan application to the Bank. *Id.* ¶ 69; *see also id.* ¶¶ 11–15. Instead of having a five-year term, the lease was terminable at will by the tenant until June 30, 2023. *Id.* ¶¶ 8, 13. Further, instead of requiring the tenant to pay a monthly rent of $10,000 for the largest space, as represented with the Lease submitted with the loan application, Plaza actually required a "first installment of [$]10,000 [to] be paid by first week of July" with the "[r]est [to] be allocated based on expenses, but not to exceed 4 months." *Id.* ¶¶ 8, 12.

5.　　　In addition to relying on the lease terms when entering the Loan Agreement, the Bank further relied on Plaza's statements related to the Leases when seeking an appraisal of the Real Property for its subsequent credit bid. *Id.* ¶ 35. Specifically, the Bank commissioned an appraisal of the Real Property that valued it at $3,530,000 based, in part, on the false terms of the Leases submitted by Plaza during the loan application process. *Id.* Because the appraisal was based on the false terms of the Leases, the appraisal value was artificially inflated. *Id.* ¶ 42.

6.　　　After Plaza defaulted on the Note in July 2025, the Bank foreclosed on the Trust Deed for the Real Property. *Id.* ¶¶ 23, 26–31. As part of this process, the Real Property was sold at public auction on April 21, 2026. *Id.* ¶ 37. As of the date of the sale, Plaza owed the Bank

3

4902-3778-4509

$3,527,127.02. *Id.* ¶ 38. At the auction, the Bank credit bid $3,100,000 for the Real Property and the trustee accepted the bid as the highest and best offer. *Id.* ¶¶ 39, 40.

7. On May 15, 2026, the Bank filed a Counterclaim against Plaza asserting three claims: (1) deficiency judgment, (2) breach of contract, and (3) mortgage fraud. *See id.* ¶¶ 46–74.

8. In response, Plaza has filed the instant Motion asking the Court to dismiss the Bank's first and third causes of action against it. *See* Dkt. 32. Specifically, Plaza maintains the first and third causes of action should be dismissed because (1) the Bank failed to allege fraud with particularity, (2) the Bank failed to allege any legal duty to communicate omitted facts, and (3) the Bank failed to allege any deficiency or damages based on Plaza's fraudulent statements made in the loan application. *Id.* at 8–13. Plaza further insists that the first cause of action for deficiency judgment should be dismissed because (4) the Bank failed to allege the fair market value of the Real Property *Id.* at 11. On each point, Plaza is incorrect.

## LEGAL STANDARD

The relevant legal standards counsel in favor of denying Plaza's motion. Under Federal Rule of Civil Procedure 12(b)(6), dismissal "is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face." *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "In evaluating a motion to dismiss, the court must take as true all well-pleaded facts, as distinguished from conclusory allegations, view all reasonable inferences in

4

favor of the nonmoving party, and liberally construe the pleadings." *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1130–31 (10th Cir. 2024) (cleaned up).

## ARGUMENT

### I.  THE BANK'S FRAUD-BASED CLAIMS AGAINST PLAZA ARE PLEADED WITH PARTICULARITY.

The Bank pleaded their fraud-based claims with adequate specificity. When "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "The requirements of Rule 9(b) must be read in conjunction with the principles of Rule 8, which calls for pleadings to be "simple, concise, and direct, . . . and to be construed as to do substantial justice." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (quoting Fed. R. Civ. P. 8(e), (f)). To satisfy this pleading standard, a claimant must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1254 (10th Cir. 2016) (cleaned up).

The Bank identifies the time of the false representation (when the loan application was submitted to the Bank, on or about July 6, 2022), the place (in Plaza's Loan Application), the contents of the false representation (that the Com Com Market Lease had a five-year term and a fixed monthly rent payment of $10,000), and the identity of the parties making the false statement (Plaza and Mr. Reddy). *See* Counterclaim ¶¶ 6–10. The Counterclaim further includes allegations related to the consequences of the fraudulent statement: (1) the Bank entered into the Loan Agreement with Plaza, lending it $2,750,000, and (2) the Bank's subsequent appraisal of the Real

5

4902-3778-4509

Property and credit bid for the same were artificially inflated based on Plaza and Mr. Reddy's misrepresentations related to the lease terms. *Id.* ¶¶ 16–18, 35, 42.

Plaza insists that these allegations are insufficient because the Bank attributes the misrepresentation to both Plaza—the party submitting the loan application—and Mr. Reddy—Plaza's manager and member who executed the loan application. Motion at 8–9. But a pleading may "attribute[] the statements of the individual defendants" to a company defendant where the company is responsible for the accuracy of the statement. *See Schwartz*, 124 F.3d at 1253. Plaza also maintains that the Bank's allegations related to the fraudulent statement are not detailed enough. Motion at 9. Plaza is incorrect that additional details are required to meet the Rule 9 pleading standard. Indeed, "Rule 9(b) does not require that a complaint set forth detailed evidentiary matter as to why particular defendants are responsible for particular statements, or that the allegations be factually or legally valid. Instead, Rule 9(b) requires that the pleadings give notice to the defendants of the fraudulent statements for which they are alleged to be responsible." *Schwartz*, 124 F.3d at 1253.

Here, the details of the Bank's allegations, including the nature of the relationship between Mr. Reddy and Plaza, combined with Plaza's submission of the loan application to the Bank, easily give Plaza fair notice of the Bank's "claims and the factual ground upon which they are based." *Id.* Rule 9(b) requires nothing more. Because the Bank pleaded its fraud-based claims with sufficient particularity to satisfy Rule 9(b), the Court should reject Plaza's particularity arguments in support of the Motion and deny the same.

6

4902-3778-4509

## II. THE BANK HAS ASSERTED A FRAUDULENT MISREPRESENTATION CLAIM—NOT A FRAUDULENT OMISSION CLAIM.

Plaza interprets the Bank's fraud-based claims as relying on a fraudulent omission—*i.e.*, failure to disclose the addendum changing the terms of the lease. Motion at 9–10. Based on that interpretation, Plaza then argues that the fraud-based claims fail to state a claim because the Counterclaim does not include allegations related to a legal duty requiring Plaza to communicate the lease terms contained in the omitted addendum. *Id.* at 10. But Plaza misunderstands the fraud claim pleaded against it.

As described above, the Bank's fraud-based claims are based on Plaza's affirmative representations of the terms of the Leases in its loan application—*i.e.*, that each lease had a five-year term and fixed monthly rent obligations. *See also* Counterclaim ¶¶ 8–10, 69–74. The Bank alleges that these representations regarding the lease terms were false and that Plaza knew they were false at the time it submitted the loan application, as demonstrated by an addendum to at least one lease that was executed before Plaza submitted its loan application. *Id.* ¶¶ 11–15, 69–74. Where the Bank's fraud-based claims are based on Plaza's affirmative representation of the lease terms in the loan application, the Bank is not required to plead any legal duty for Plaza to communicate truthfully. *See Mitchell v. Wells Fargo Bank*, 355 F. Supp. 3d 1136, 1160–62 (D. Utah 2018) (noting that an affirmative misrepresentation is a required element of fraud and that "a legal duty to communicate" is an element of fraudulent nondisclosure). Accordingly, the Court should further reject Plaza's arguments related to an unpleaded theory of fraudulent omission.

4902-3778-4509

## III.   THE BANK SUFFICIENTLY PLEADED DAMAGES BASED ON PLAZA'S FRAUDULENT MISREPRESENTATIONS.

The Bank has sufficiently pleaded damages caused by Plaza's fraudulent misstatements. In the Counterclaim, the Bank alleges that it "suffered damages as a result of relying on" Plaza's statements in the loan application including entering into the Loan Agreement with Plaza and lending Plaza $2,750,000. *See* Counterclaim ¶¶ 16–18, 74. The Bank further alleges that the misrepresented lease terms were material to its "decision to extend credit." *Id.* ¶ 16. The Bank also alleges that it relied on Plaza's misrepresentations related to the Leases when commissioning an appraisal of the Real Property. *Id.* ¶¶ 35, 74. By relying on Plaza's misrepresentations of the lease terms applicable to the Real Property, the appraisal reflected an artificially inflated market value and subsequent credit bid. *Id.* ¶¶ 35, 42, 75. In other words, Plaza's misrepresentations related to the Leases intentionally caused the Bank to overvalue the Real Property first when entering into the Lease Agreement, and then again in its credit bid. *Id.* ¶¶ 16–18, 35, 42.

Plaza maintains that the Bank's credit bid cannot plausibly constitute damages because the Bank chose how much to bid and relied on an appraisal. *See* Motion at 10–11. It is incorrect. As alleged in the Counterclaim, the Bank's credit bid and appraisal were based on Plaza's representations regarding the terms of the Leases. *See* Counterclaim ¶¶ 35, 39–43. Plaza has failed to provide any support for its argument that a claimant cannot rely on damages incurred based on a bid or appraisal that was fraudulently inflated based on the defendant's misrepresentations. *See* Motion at 10–11. Instead, "Utah courts adhere to the 'benefit of the bargain rule' for determining damages in a fraud case. This means that in an action for fraud and deceit the measure of damages is the difference between the actual value of what the party received and the value thereof if it had been as represented." *Rabo Agrifinance, Inc. v. Bliss*, 227 F. Supp. 3d 1249, 1253 (D. Utah 2017)

8

(cleaned up). As described above, the Bank sufficiently pleaded these damages in the Counterclaim. *See* Counterclaim ¶¶ 42, 43 (noting that "a deficiency remains after applying the actual value of the Real Property to the amounts due to the Bank . . . to be determined based on the actual value of the Real Property and income realizable thereon").

Plaza also argues that the Bank cannot plausibly allege damages based on its misrepresentations of the lease terms because the tenant did not take the undisclosed option to terminate the lease at will as provided in the addendum. *See* Motion at 11. Of course, this fact is not pleaded in the Counterclaim. Accordingly, the Court should disregard the argument. But even if that fact were established in a pleading—which it is not—that fact is not determinative of the Bank's damages. The Bank alleges that Plaza's misrepresentations about the lease terms with its lease application were material to the value of the security that the Bank received in exchange for the $2,750,000 credit it extended to Plaza. *See* Counterclaim ¶¶ 7–16. Whether or not the tenant ultimately took the option to terminate the lease early does not change the fact that a lease that is terminable at will is less valuable than a lease without such a provision. Accordingly, the value that the Bank, and subsequently the appraiser, would place on the leases as collateral for the loan and the value of the leases when purchasing the Real Property, depends on whether the leases are terminable at will, and whether they have a set rent payment requirement. Here, the Bank has adequately pleaded that it was damaged by Plaza's misrepresentations of the terms of the leases— *i.e.*, their value. And whether or not the tenant ultimately exercised the option to terminate the lease early is not determinative of the Bank's damages based on the lease's misrepresented value.

In sum, the Bank has sufficiently alleged that it was damaged based on Plaza's misrepresentations of the lease terms. Accordingly, the Court should deny Plaza's Motion.

9

4902-3778-4509

**IV.**   **THE BANK SUFFICIENTLY PLEADED FAIR MARKET VALUE FOR THE PURPOSES OF SEEKING A DEFICIENCY JUDGMENT.**

Finally, Plaza insists that the Bank's deficiency judgment claim fails to adequately allege the fair market value of the Real Property. *See* Motion at 12. Again, Plaza is incorrect.

Utah Code § 57-1-32 provides the procedure for obtaining a deficiency judgment. *See Machock v. Fink*, 2006 UT 30, ¶ 22, 137 P.3d 779. That section provides—

> At any time within three months after any sale of property under a trust deed . . . an action may be commenced to recover the balance due upon the obligation for which the trust deed was given as security, and in that action the complaint shall set forth the entire amount of the indebtedness that was secured by the trust deed, the amount for which the property was sold, and the fair market value of the property at the date of sale. Before rendering judgment, the court shall find the fair market value of the property at the date of sale. The court may not render judgment for more than the amount by which the amount of the indebtedness with interest, costs, and expenses of sale, including trustee's and attorney's fees, exceeds the fair market value of the property as of the date of the sale.

Utah Code § 57-1-32. This provision "cap[s] the amount of the deficiency judgment at the difference between the amount owing on the note (with interest, costs, and expenses of sale) and the fair market value of the foreclosed property at the time of the trustee's sale." *AmericanWest Bank v. Kellin*, 2015 UT App 300, ¶ 13, 364 P.3d 1055.

In the Counterclaim, the Bank alleges that as of the date of the sale, April 21, 2026, Plaza and Reddy owed it $3,527,127.02 that was secured by the Property and personally guaranteed by Reddy. *See* Counterclaim, ¶¶ 20, 21, 38. At the sale, the Bank alleges that the Property was sold at public auction for $3,100,000. *Id.* ¶ 39. The Bank further alleges that the Property was appraised at $3,530,000 prior to the sale, but that the appraisal did not reflect the fair market value of the Property because it was based on Reddy and Plaza's misrepresentations about the existing leases.

4902-3778-4509

*See id.* ¶ 35. In other words, the Bank alleges that the fair market value of the Property as of the date of the sale was less than $3,530,000. *Id.* ¶¶ 35, 42–43. Before the Court can enter a judgment on this claim, it will determine the "fair market value of the property as of the date of the sale" with the benefit of evidence discovered throughout this adversary proceeding. At this stage of the litigation, however, the Bank's allegations of fair market value are sufficient. *See Machock*, 2006 UT 30, ¶ 26 (noting, "as long as the primary purposes of the statute are satisfied, an action will not be barred for failure to initially meet certain procedural requirements of section 57-1-32"). Reddy's and Plaza's defenses are subject to proof, not dismissal at the pleading stage.

## CONCLUSION

For the reasons set forth above, Plaza's Motion should be denied.

DATED: July 20, 2026

**PARSONS BEHLE & LATIMER**

/s/ Brian M. Rothschild
Brian M. Rothschild
Zack L. Winzeler
Whitney E. McKiddy

*Attorneys for Defendants, Counterclaim
Plaintiff, and Third-Party Plaintiff*

4902-3778-4509

## <u>CERTIFICATE OF SERVICE BY ELECTRONIC NOTICE (CM/ECF)</u>

I hereby certify that on July 20, 2026, I electronically filed the foregoing

**MEMORANDUM IN OPPOSITION TO PLAZA 106, LLC'S MOTION TO DISMISS**

**COUNTS ONE AND THREE OF FIRST UTAH BANK'S COUNTERCLAIM** with the

United States Bankruptcy Court for the District of Utah by using the CM/ECF system. I further

certify that the parties of record in this case, as identified below, are registered CM/ECF users.

 

**Brody Valerga on behalf of Plaintiff Plaza 106, LLC**
brodyvalerga@gmail.com

 

/s/ *Brian M. Rothschild*
Brian M. Rothschild

4902-3778-4509